### GENEVA-PEARL OIL & GAS CO. v. HICKMAN et al.

No. 21379.   Opinion Filed March 10, 1931.

A. J. Follens, for petitioners.

Robert D. Crowe, Asst. Atty. Gen., for respondents.

HEFNER, J.   Claimant was injured while working for the Geneva-Pearl Oil & Gas Company as a pumper and as a result of the accident suffered 85 per cent. of the loss of vision of the right eye. The company filed an answer admitting the injury, but pleaded that the claimant was hired at a wage of $50 per month to be paid by the Geneva-Pearl Company and $90 per month by the Rockland Oil & Gas Company and that any award rendered against the Geneva-Pearl Oil & Gas Company should be based on a wage of $50 per month and not a wage of $140 per month. The Rockland Company was not made a party. The wells were located on adjacent leases, but neither company had any interest in the wells of the other.

It appears from the facts that claimant was engaged to look after the pumping of the wells on two leases, one of which belonged to the Geneva-Pearl Company and the other to the Rockland Company. His monthly wages were paid by the separate check of each company.

The Commission entered its order awarding compensation for 85 per cent. loss of vision in the eye. It found that the claimant was paid $50 by the Geneva-Pearl Company, but on account of claimant being paid $140 by both companies, the claimant was awarded compensation on the basis of $140 per month, the total wage paid by both companies. The case is brought here for review by the respondents.

It is first contended that there is no provision in the Oklahoma Compensation Act providing for awarding compensation on the basis of joint or concurrent employment and for this reason the award should be based on the actual wage the employee received from the employer for whom he was working at the time of the injury. The next contention is that if the Compensation Act contemplates computing an injured employee's wage on the basis of the concurrent wage paid by several employers at the time of the injury, then the facts in this case show that the employment is a joint one and the Rockland Oil Company should have been made a party and that the award should have been prorated between the two companies.

These questions have never been passed upon by this court. The Supreme Court of Utah, in the case of Bamberger Electric R. Co. v. Industrial Commission of Utah, 203 Pac. 345, said:

"Where deceased, employed by an electric railroad company, and also by an electric power company, spent part of the time operating railroad company's transformers on one side of a building and a part of his time attending to the power company's machinery on the other side of building, his death from

injuries sustained while attending the power company's machinery, at a time when he was performing no duties for the railroad company, was not the result of an accident arising out of or in the course of his employment with the railroad company, and the railroad company was not liable for any part of the compensation awarded under the Workmen's Compensation Act, but the full amount of the award based upon the total amount of his earnings from both companies should be made against the power company alone."

As to the rule announced in the above case, the decisions are not uniform, and as evidence thereof reference is made to the following cases: Western Metal Supply Co. v. Pillsbury (Cal.) 156 Pac. 491; Curran v. Newark Gear Cutting Mach. Co., 37 N. J. L. J. 21; Gillen v. Ocean Accident & Guarantee Co. (Mass.) 102 N. E. 346; In re Howard (Ind.) 125 N. E. 215; Chicago & I. Traction Co. v. Industrial Board (Ill.) 118 N. E. 464; Maggie Sargent v. A. B. Knowlson Co. (Mich.) 30 A. L. R. 993; Re Henry A. Quebec, Deceased (Mass.) 30 A. L. R. 996; King's Case (Mass.) 125 N. E. 153; Marvin's Case (Mass.) 125 N. E. 154.

The rule announced in each state depends largely, of course, upon the statute of the particular state. The rule we announce must depend upon our interpretation of our statutes. The controlling statute here is section 7289, C. O. S. 1921, which is as follows:

"Except as otherwise provided in this act, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"3. If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident.

'4. The average weekly wages of an employee shall be one fifty-second part of his average annual earnings.

"5. If it be established that the injured employee was a minor when injured, and that under normal conditions his wages would be expected to increase, the fact may be considered in arriving at his average weekly wages."

These provisions seem to make the "average" weekly wages of the injured employee at the time of the injury the basis upon which compensation shall be determined. It is not based upon the employee's contract with any particular one of his employers, but with all of them. It is based upon the average weekly wages he receives from the business or occupation in which he is engaged.

The first paragraph of section 7289, provides that if the injured employee shall have worked in the "employment" in which he was working at the time of the accident, whether for the "same employer or not," during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed. For a proper understanding of this section it is necessary for us to determine what is meant by the word "employment." In the sense in which it is used here, Webster defines it as follows: "That which engages or occupies; that which consumes time or attention; occupation; office or post of business; service; as agricultural employment; business employment." As used here it means the "occupation" or "business" of the injured employee. In other words, in this particular case the business of the injured employee was that of a pumper or to look after the pumping of the wells on the two leases. That was his business or employment. It makes no difference whether he gave all of his time to one or more employers. His average wage was the average total amount he received for all of his time while engaged as a pumper. He was engaged in that capacity for more than a year continuously preceding the accident. In such a case the

statute provides that his annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned as a pumper during the days when so employed. It cannot be said his average wage as a pumper was $50 per month, because that is not true. One company paid him $50 and another $90 per month. His average wages therefore, must necessarily mean the average total amount he received from both companies.

The language used in this section seems to be significant. In the first part of it "average weekly wages" appears. In the first and second paragraphs the term "average annual earnings" is used. The third paragraph provides for cases where neither the first nor second paragraph is applicable. It provides that if neither of those methods of arriving at "annual average earnings" can reasonably and fairly be applied, such "annual earnings" shall be. * * * The fourth paragraph provides that the "average weekly wages" shall consist of one fifty-second part of the average "annual earnings." The fifth paragraph provides that if the employee is a minor when injured and under normal conditions his wages would be expected to increase, that fact may be considered in arriving at his "average weekly wages." The scheme of all of these provisions seems to be to provide for a fair method whereby the "average annual earnings" or "average weekly wages" can be fairly and reasonably determined. We think the Legislature intended to provide for a method whereby the average weekly wages could fairly be determined.

The insurance carrier cannot complain, because the law relating thereto became a part of his contract. Again, if the employee worked one-third of his time for each of three employers, it is fair to them, because they each take the risk for one-third of his time and no more.

The petition to vacate is denied.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents.

KORNEGAY, J. (dissenting). I am not able to concur in the decision in this case as rendered by the majority of the court. To my mind the decision violates the letter and spirit of the Constitution. That instrument prescribes and describes the way laws shall be made. Under it the Legislature and the executive. if they agree, make the law. If they do not agree, the Legislature alone makes the law. subject always to the provisions of the Constitution limiting the powers of the Legislature and guaranteeing individual rights.

The decision reads into the act what the Legislature did not put in it. The subject of laborer's compensation regulation has been before the Legislature four times. The first act was in the year 1915, and begins on page 574, ch. 246, of the Session Laws of 1915. Its title is as follows:

' Workmen's Compensation Law—General Provisions.

"An Act providing for the compulsory compensation of injured employees in hazardous industries, placing the supervision of the act under a commission herein created. Fixing a schedule of awards, and providing penalties for the violation of this act."

It defines the meaning as used in the act of the words "employer," "employee," "employment," "compensation," "injury," "wages," "insurance carrier," as follows:

"3. 'Employer,' except when otherwise expressly stated, means a person, partnership, association, corporation, and the legal representatives, of a deceased employer, or the receiver or trustee of a person, partnership, association, or corporation, employing workmen in hazardous employments, and shall include the state, county, city or any municipality when engaged in any hazardous work within the meaning of this act in which workmen are employed for wages; provided, however, that so long as by state law, city charter or municipal ordinance, provision equal to or better than that given under the terms of this act is made for such employees injured in the course of employment, such employees shall not be entitled to the benefits of this act.

"4. 'Employee' means any person engaged in manual or mechanical work, in the employment of any person, firm or corporation carrying on a business covered by the terms of this act.

"5. 'Employment' includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain.

"6. 'Compensation' means the money allowance payable to an employee as provided for in this act.

"7. 'Injury or personal injury,' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom.

"8. 'Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging or similar advantages received from the employer.

"9. 'Insurance carrier' shall include stock corporations, reciprocal, or inter-insurance association, or mutual associations with which employers have insured, and employers permitted to pay compensation directly under the provisions of subdivision (d) of section 1 of article 3 of this act."

In 1919 Session Laws, page 14, ch. 14, the Legislature again took up the subject, and enlarged other definitions, but did not change these. There is added, beginning on page 4, a footnote giving the history of the Workmen's Compensation Laws. It discusses their validity as affected by the Constitution, and cites the Iten Biscuit Company Case, decided by this court and reported in 63 Okla. 52, 162 Pac. 938, 1 Okla. I. C. C. 62, and the case of New York Company v. White, 243 U. S. 188. The annotator with reference to insurance says, "In Oklahoma the employer must insure in private companies or provide self insurance."

On the subject of compensation the annotator says:

"Computation of Compensation. The compensation to be paid the injured employee is based on his wages. The Commission has held that where the injured employee works for two employers, his compensation is to be based on the wage received from the employment in which he received his injury and cannot include both. Berry v. Cox, 1 Okla. I. C. C. 1. An expected wage increase will not be considered. Finney v. Board, 1 Okla. I. C. C. 102."

While these annotations are not binding on this court, they at least should be persuasive in view of the fact that they date back to 1919.

Again, in 1923, the Legislature had the matter before it. Page 118, ch. 61, Session Laws 1923. Perhaps it might be argued that in making the amendments of 1923 it did not have in mind these annotations, because it undertook to amend sections of a compilation as distinguished from a code or legislative act. However, for the purpose of the act, there was a definition section. The term "employer" is defined as in the original act; "employee" is enlarged so as to include an association of workmen; "employment" is defined as in the original act; "compensation" is defined as in the original act; "injury" is defined as in the original act; "injury and personal injury" are defined as in the original act; "wages" is defined as in the original act; "insurance carrier" is defined as in the original act, the words "of section 7308" being substituted for "of section 1 of article 3 of this act."

The first subdivision of section 7285, as amended, is article 2 of the original act; the words "if he shall employ less than two workmen" taking the place of "unless he shall employ more than two workmen." There is added a provision as to independent contractors that does not appear to bear on the question here at issue. There is a shortening of the time from 14 days to 5 days during which there is no compensation. The allowance for disability is increased from a scale of 50 per cent. of the average weekly wage to 66 2/3 per cent., and there are additions.

There is some addition concerning "permanent partial loss" of a member, etc., and some other provisions touching on hernia and hearing. The limitations are changed from $10 maximum to $18, and from $6 minimum to $8. This act also introduces the settlement idea on joint petitions.

Again, in 1929, the Legislature passed a law on the subject by requiring an appeal bond to be given by the carrier. Laws 1929, c. 30. It will be observed that with this ruling and citation of decision holding that compensation will be measured by a percentage of the wages paid by the employer called on to pay, instead of a percentage of the wages paid by both employers, the Legislature has not seen fit to vary the statute in the parts prescribing who is to receive the compensation, who is to pay the compensation, and what wages shall be used as the standard by which the compensation is to be fixed. Authorities on the subject can be found collected and annotated in 30 A. L. R., pages 1000 to 1008.

The annotator, at page 1000, says:

"The annotation is further limited to cases wherein the workman is under a definite contract of employment, either express or implied, with two or more persons, from each of whom income is derived."

The cases are reviewed. It is there stated that under the present English Workmen's Compensation Acts, owing to a change being made therein, it is now held that in case of two concurrent employments, the employer in whose employ the injuries occur must pay compensation based on the wages paid by both employers. It required a statutory provision to reach that, however. The author adds, however, the following:

"But under the earlier English Act of 1897, which made no provision respecting the award of compensation where the workman was employed concurrently by two different employers, a workman was held entitled only to compensation based on his earnings from the employer whose employee he was at the time of his injury. Thus, in Hathaway v.

Argus Printing Co. (1901) 1 Q. B. (Eng.) 96, 83 L. T. N. S. 465, 49 Week. Rep. 113, 64 J. P. 804 (1900) W. N. 247, 16 Times L. R. 42—C. A., the court held that the contention made by the claimant that, in computing the average weekly earnings upon which compensation was to be based, the sums which he earned from other employers while in the employ of the defendant should be taken into consideration, was clearly not good; for only the wages earned from the person for whom he was working at the time of the injury could be considered."

American cases are also reviewed. In Curran v. Newark Gear Cutting Mach. Co., a New Jersey case, it is intimated that one employed as a watcher by four different companies could recover of all, as it was "a general and continuous employment by all." In the Sargeant Case reported from Michigan, 195 N. W. 810, the court held all liable and that under the arrangement the contract was joint and not several.

In the Quebec (Massachusetts) Case, decided November 30, 1923, reported at page 996 of 30 A. L. R., the syllabus is as follows:

"Workman's Compensation—average weekly wages—employee of two different concerns.

"Where a workman is employed for distinct portions of his time daily by two different employers, having the same superintendent, and is injured while actually working for one of them within the time allotted to him, his average weekly wages on which compensation to his dependents is to be based consist of what is paid him by the employer in whose service he was when injured, under a statute providing that where, by reason of the nature or terms of the employment, it is impracticable to compute the average weekly wages, regard may be had to the average weekly amount which during the 12 months previous to the injury was being earned by a person in the same grade and employed in the same class of employment."

In the body of the opinion, the cases are discussed, and the effect of a provision similar to that in paragraph 3 of section 7289 of the 1921 Statutes is discussed. The opinion holds that it had no bearing. However, the applicable provisions here are subdivisions 1 and 4 of that section, as follows:

"1. If the injured employee shall have worked in the employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

"4. The average weekly wages of an employee shall be one fifty-second part of his average annual earnings."

At page 1004, 30 A. L. R., the author says:

"The American courts have generally held that, where the contract of service is joint, compensation for an injury arising out of such employment is to be based on the entire earnings from such employment. Press Pub. Co. v. Industrial Acci. Commission (Cal. 1922) 210 Pac. 820; Re Howard (1919) 71 Ind. App. 557, 125 N. E. 215; Curran v. Newark Gear Cutting Mach. Co. (1913) 37 N. J. L. J. 21. And see San Francisco-Oakland Terminal R. Co. v. Industrial Acci. Commission (1919) 180 Cal. 121, 179 Pac. 386.

The Utah case, Bamberger Electric R. Co. v. Industrial Commission, 203 Pac. 345, holds, without discussion of the statutes, that in case of death loss, the company on whose premises the accident occurs must pay, and that the company on whose premises the accident did not occur should not pay, reversing the Commission, which held that both should pay. The terms of the statute are not discussed.

Most of the cases go off on the proposition of joint employment. Take the case of the watchman. He looks, he hears practically all the time, if he is a faithful watchman. He does not sleep. He hears the sounds from all the premises and must at all times be "on watch."

Our statute is based on "wages," not earnings. In arriving at the amount the employer is liable for, it is for medical care, and for two-thirds of the weekly wages paid by the employer, while the employee was working for him for hire. The insurance contracts of the carrier are based on the pay roll of the employer. Where this is true, would it not be judicial legislation for the court to hold that the employer's liability shall vary, depending on whether his employee has or has not an advantageous side contract with a concurrent employer, or has none?

Throughout all the cases it appears that you must look to the peculiar statute being construed. In the case of Walton v. Electric Service Company, decided by the Supreme Court of Kansas, 247 Pac. 846, notwithstanding a provision was in the statute on the subject of concurrent contracts of service, and the method of computing the amount of award being based thereon, the court held that as the business of the second employer was not within the Workman's Compensation Law, the compensation would have to be made strictly based on the wages that

the employer whose business came within it was paying.

The late cases in Massachusetts hold the same. Our own statute is silent on the subject, but is clearly based on compensation being fixed on the basis of the wages actually being paid at the time of the injury.

The evidence in this case shows that the claimant had been in the employ of the Geneva-Pearl Oil & Gas Company for 6 years, receiving a wage of $50 per month. A simple calculation based on $50 per month, the employment having continued for 6 years, would show the wages per week that the employee was drawing from his employer.

Our statute is based upon the relation entirely of employer and employee. It was enacted in 1915, and there is nothing in the original statute that would indicate that it was the intention of the Legislature, in case the laborer was working for two separate parties on two separate contracts, to require either employer to do more than guarantee compensation based on the rate of the wages paid by the employer, subject to the limitation that the compensation do not exceed 66 2/3 per cent. of the average weekly wage paid per week by the employer to the employee, and subject to the further provision that in no event should it exceed $18 per week, and in no event should it be less than $8 per week, with a further proviso that in the event the weekly wages paid by the employer to the employee was less than $8, that the full amount paid per week would be the standard for the weekly payment during disability. Section 6 of chapter 61 of the 1923 Act, at page 123, carries this limitation. Said section is as follows:

"Section 6. Section 7290, Compiled Oklahoma Statutes, 1921, is hereby amended to read as follows:

"Section 7290. The following schedule of compensation is hereby established:

"1. Permanent Total Disability: In case of total disability adjudged to be permanent, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding 500 weeks; loss of both hands, or both feet or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts.

"2. Temporary Total Disability: In case of temporary total disability, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance thereof, but not in excess of 300 weeks except as otherwise provided in this Act. * * *

"5. Limitation: The compensation payments under the provisions of this act shall not exceed the sum of $18 per week, or be less than $8 per week provided, however, that if the employee's wages at the time of injury are less than $8 per week, he shall receive his full weekly wages; provided, further, that the compensation received as provided under subdivision 4 of this section shall not, when added to the wages received by such employee after such injury, amount to a greater sum than his average weekly wages received prior to said injury."

In the present case the Commission found that the injury to the eye was a permanent partial disability of 85 per cent. and fixed the compensation, and allowed the claimant $18 per week for one week and one day for temporary total disability, amounting to $21, and in addition thereto, adjudged that the claimant was entitled to compensation at the rate of $18 per week, computed from May 22, 1929, for a period of 85 weeks.

It seems to me that under our statute the compensation in this case should have been 1/52 of $600, the amount that had been paid by the employer to the employee in this case for the last 6 years, per year, $11.54 per week, multiplied by 2/3, replaced by the minimum of $8, and that the carrier of the Geneva-Pearl Oil & Gas Company cannot be held liable for more than that, and that the Geneva-Pearl Oil & Gas Company cannot be held liable for more than that. See Dysart v. Machine Service Co., 1 Okla. I. C. C. 127.

Had the Rockland Oil & Gas Company never employed the plaintiff in this case, it is not thought that the claimant would have been entitled to more than this amount per week.

There does not seem to be anything in this statute that would make the employer liable on any other basis than that of the contract of employment, and his liability for injury depends upon the amount agreed upon between the employer and employee for his wages.

It is possible that the award in this case might be sustained, if the court should hold that the employment in this particular case was a joint one, but I do not believe that the statute is subject to the interpretation placed on it by the majority of the court, as the employment was separate and distinct. I do not believe that the statute, so interpreted, will stand up as against the provisions of the Bill of Rights,

contained in the Constitution. I am further fortified in my view on this matter by the history of Workman's Compensation Laws, as found in the Acts of the 7th Legislature, in the year 1919, at page 14. By reference thereto, it will be seen that these Compensation Laws originated in Europe as early as 1884, and they appear to have started in America at a later date. Our own law started in 1915; Massachusetts as early as 1911, and New York in 1914. The annotations to the Act of 1919 have already been set out.

By reference to the annotation under the legislative enactment of 1919, found at page 25 of the Session Laws of 1919, we find that the first case of the published reports of the Industrial Commission is cited and as holding opposite of what the majority in this case have announced.

A syllabus is made to the opinion prepared by the Commission and the opinion was rendered by Judge McDonald, who was at that time the chairman of the Commission, and one of the best lawyers this state has produced. He was a man of intellectual attainment, stood high in legal circles, held a place in the councils of his party, and for a long time was a regent on the board of the State University. He delivered this opinion before the air was rendered murky, and before the waters had become muddied as a result of so many declarations of what this statute meant.

The analysis he gave of it seems to be perfect and warranted by the surroundings and by the law itself. His opinion is found on page 2 of the Industrial Commission Reports, it being No. 1, and is as follows:

"Opinion by McDONALD, Chairman. The parties of this cause have entered into the following agreed statement of facts:

" 'We, Ray Berry of Bartlesville and the Bartlesville Zinc Company and the Travelers Insurance Company, have agreed upon the following statement of facts relative thereto:

" '(1) Said injury was sustained on September 4th, 1915, at 9:30 a. m.

" '(2) Nature of injury: Testicles badly injured.

" '(3) Period of disability: From September 4, 1915, to September 29, 1915.

" 'The Travelers Insurance Company has agreed to pay for the medical service and medicines that were incurred during the first 15 days following the injury.

" 'The weekly wages of Ray Berry amounted to $19.60 at the time he was injured. In addition to this amount he received $10.50 a week from working in a confectionery store. It is agreed by all parties hereto that Ray Berry was disabled from September 4, 1915, to September 29, 1915, and that during this time he would have received $19.60 a week from the Bartlesville Zinc Company and $10.50 a week from the confectionery store. It is claimed by the said Ray Berry that he is entitled to fifty (50) per cent. of what he would have earned from these two employments, after excluding the first two weeks, as his compensation. It is claimed by the Bartlesville Zinc Company and the Travelers Insurance Company that the said Ray Berry is only entitled to fifty (50) per cent. of the $19.60 as his compensation. This is the sole question in dispute between the parties hereto.'

"The sole question for the Commission to determine in this case is, whether in computing the average weekly wages of the claimant, it should be based solely on his wages received from the respondent, or by adding together his wages received from the respondent and the confectionery store, in which he was also employed.

"In this case the claimant suffered what is termed a temporary total disability. Subsection 2 of section 6 of article 2 says:

" 'In case of temporary total disability, fifty per centum of the average weekly wages shall be paid to the employee, during the continuance thereof, but not in excess of three hundred weeks, except as otherwise provided in this act.'

"Wages is defined in subsection 8, of section 3, of article 1, as follows:

" ' "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer.'

"The foregoing section seems to limit the wages to those covered under the contract of hiring in force at the time of the accident * * * received from the employer. It may be contended that the words 'received from the employer' refers to board, rent, housing, lodging or similar advantages, but that contention is hardly tenable.

"It would seem that under the act, the compensation should be based upon the wages received under the contract of hiring with the employer, and not from the sum total of wages received in other employments.

"It is true there are a number of British cases holding the contrary, but an examination of the British Compensation Act discloses that that act provides where a workman makes concurrent contracts of service, his wages shall be computed as if his earn-

ings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident.

"Compensation will therefore be awarded on the basis of the claimant's wages from the Bartlesville Zinc Company only.

"JACKSON and BLESSING, Commissioners, concur."

At page 32 of the Industrial Commission Reports, the Commissioners, composed of Judge McDonald, and W. C. Jackson, another attorney of the old school, and W. L. Blessing, had occasion to pass on the compensation that should be allowed a wage earner working at $3.20 a day and working 7 days a week. It was at a time when the standard was one-half of the wages, as compared to two-thirds now. The language used by the Commission, speaking through Judge McDonald, can be found on page 34, as follows:

"The question presented in this case is to determine the compensation the claimant is entitled to under the terms of the Oklahoma Workman's Compensation Act. The act provides for the computing of compensation as follows:

"Subsection 1, section 5, of article 2, is:

"'If the injured employee shall have worked in the employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.'

"Subsection 4 of section 5 of article 2 is as follows:

"'The average weekly wages of any employee shall be one fifty-second part of the average annual earnings.'

"The claimant's contention is due to the fact that he works seven days a week, and the Legislature no doubt had in mind, when prescribing the above rule of computing compensation, that the workmen would not work on Sundays. No doubt an employee that works in an occupation that requires Sunday labor should have his Sunday wages taken into consideration in arriving at his compensation, but the act specifically provides that his annual wage shall be 300 times his average daily wage, and that his weekly wage shall be one fifty-second of his annual wage.

"It is agreed that the claimant's wage was $3.20, which, multiplied by 300, would make his annual wage $960; one fifty-second would be $18.46 a week, and 50 per cent. of his weekly wage would be $9.23, the amount he would be entitled to as compensation. The Commission is therefore of the opinion that $9.23 represents the sum he is entitled to as compensation, and an award will be made accordingly.

"JACKSON and BLESSING, Commissioners, concur."

It appears, therefore, that the language of the act that is now being construed by the majority of the court was construed very early in the proceedings, and that the construction placed thereon was carried into the Session Laws of 1919, and has remained there since.

The Legislature has acted on the matter in several ways and at different times, but it has never occurred to the Legislature to modify the rule of construction announced in the first case that was before the Commission.

It further appears that the entire act prescribing what should be paid by the employer is based upon a percentage of the wages that the employer was paying the employee at the time for the accident.

The Utah case that is referred to in the opinion, that is cited in the opinion of the majority of this court, is far different from ours. The case cited was a death case, and it appears that compensation was sought under the Compiled Laws of 1917, sections 3161 to 3165.

An inspection of those laws will show that the scheme of insurance is quite different from what it is here. There are several kinds of insurance, as an inspection of the statute will show. One is a system of state insurance whereby every employer is assessed for a common fund.

It appears in the proceeding that the mother of the deceased was seeking compensation. Whether in case both companies were liable, the insurance of each was of the same kind, or whether the only insurance involved was that of the electric company, which was a self-insurer, does not appear, but in any event it was a death loss, and an inspection of the statute shows that the amount of recovery depends on several contingencies, and that the provisions for compensation are different from our statutes.

Under these conditions I think it quite safe to look to our statutes, rather than to the Utah decision, and I feel it my duty to file this dissenting opinion.

Note.—See under (1) anno. L. R. A. 1916A, 149, 260; L. R. A. 1917D, 175; 38 A. L. R. 844; 28 R. C. L. p. 821; R. C. L. Perm. Supp.

p. 6244. (2) anno. L. R. A. 1916A, 373; L. R. A. 1917D, 175; 30 A. L. R. 1000; 58 A. L. R. 1396; 28 R. C. L. p. 822; R. C. L. Perm. Supp. p. 6245; R. C. L. Continuing Perm. Supp. p. 1209.