**BURKAN OIL COMPANY and Mid-Continent Casualty Company, Petitioners,**

v.

**Charles Clifford NOTLEY and the State Industrial Court, Respondents.**

**No. 43655.**

Supreme Court of Oklahoma.

Sept. 14, 1971.

Whitten & McDaniel, Tulsa, for petitioners.

E. W. Keller, Oklahoma City, for respondents.

McINERNEY, Justice:

There is involved here for review an order of the Oklahoma State Industrial Court awarding the respondent, Charles Clifford Notley, compensation benefits under the provisions of the Oklahoma Workmen's Compensation Act. Parties will be referred to as they appeared before the State Industrial Court. The State Industrial Court will be referred to as the "Trial Court".

Claimant on April 30, 1968 was employed by respondent, Burkan Oil Company, as on oilfield pumper at an oil lease in Osage County, Oklahoma. He was paid a salary of $210.00 per month by respondent for his services. He was also employed as a pumper by the owners of another oil lease nearby at a salary of $285.-00 per month. A fire occurred on respondent's oil lease causing burns on claimant's left leg.

The order of the State Industrial Court awards the claimant temporary total disability for a period of time from April 30, 1968 to July 22, 1968, 11 weeks and 5 days in the total amount of $532.00; temporary partial disability from July 22, 1968 to and including September 3, 1968, in the total amount of $247.14; 35 percent permanent partial disability to the left leg or 61.25 weeks compensation at $42.50 per week amounting to a total of $2,603.13.

Respondent contends the trial court erred in finding claimant's permanent partial disability to the left leg or 175 weeks, and such disability should have been determined on the basis of permanent partial disability to the left foot or 150 weeks.

We have held that under the provisions of 85 O.S.1961, § 22, Subdivision 3, that if the loss of use of an ankle does not result in functional impairment at or above the knee the compensation should be determined on the basis of the disability to the foot. Stoldt Builders, Inc. v. Thomas, Okl., 393 P.2d 875, 876–877 (1964). If the loss of use results in a functional impairment at or above the knee the compensation should be determined on the

basis of disability to the leg. Transcon Lines v. Brotherton, Okl., 438 P.2d 935, 937 (1968).

Claimant testified that he injured his left leg below the knee; that the injury causes him to limp when he walks. Claimant's injured leg was exhibited to the trial judge. The trial judge states in the record, "Let the record show claimant's left leg from about the middle of the instep upward to within eight inches of the knee is scarred on the front, or shin side, and the scar runs around on the back of the leg into the calf."

The reports of two doctors were submitted in evidence; Dr. M for claimant and Dr. F for respondent. Dr. M in his report states that claimant's complaints are "to the left lower extremity as well as his foot on this same side." He finds claimant to have an extensive skin graft on the left thigh with some atrophy in the soft tissue structures; claimant's primary difficulty to be from the knee down, on the left side. The skin graft covers the anterior aspect of the extremity from the knee to the ankle and almost completely encircles the leg as a result of second and third degree burns in these regions. Claimant has edema of the foot and the ankle with painful weight bearing. "The ankle itself is limited in motion, the knee is also limited but to a lesser extent in the ankle. The weight bearing line is normal and he has also painful weight bearing. Neurologically he has hypoactive deep reflexes at the knee and ankle with some increase in sensitivity in the scarred area.

"Claimant has, due to his accident of April 3, 1968, cosmetic disfigurement about the left lower extremity from the knee to the ankle. He has evidence of considerable impairment of circulation in this extremity and due to the accident of April 3, 1968, and has a 40% permanent partial disability to the left foot for the performance of ordinary manual labor."

Dr. F finds claimant's "burn injury" to be confined to "the left lower extremity"; that there is a "well healed burn scar of the lower two-thirds of the left leg about 3″ below the knee to the shoe level"; he describes the scarring of the left foot but also states that there are donor sites on the left thigh occupying "the anterior portion of almost the entire left thigh." Dr. F finds the claimant to have "20 percent permanent partial impairment of the left lower extremity."

We have held that in evaluating the probative value of conflicting medical evidence the trial court may consider a portion of the testimony of a witness and reject other portions of his testimony. The decision of the trial court "is then based on the testimony that seems most plausible and acceptable, whether it comes in part from one or more witnesses or entirely from one source." Cassidy v. Harding, Okl., 451 P.2d 698, 699 (1969).

In Workmen's Compensation proceedings the employer is liable "for all legitimate consequences of a compensable injury, including complications which may arise from surgery performed upon the workman to correct the condition sustained by him as the result of an industrial accident." In Re Greer, Okl., 356 P.2d 356, 359 (1960). It was proper for the trial court to consider disabilities to the leg caused by grafting skin from the hip to lower portion of the left leg. The evidence is sufficient to sustain the finding of the trial court that the injuries sustained by the claimant have caused a functional impairment of the leg and therefore the award should be based on a disability to the leg as distinguished from a disability to the foot.

However, the medical evidence is insufficient to sustain an award of 35 percent permanent partial disability to the left leg. Claimant's doctor, Dr. M, finds the claimant to have a 40 percent disability to the left foot. Respondent's doctor, Dr. F, finds the claimant to have a 20 percent disability to the left lower extremity, or left leg. There is no method whereby these two conflicting findings can be harmonized sufficiently to sustain an award of 35 percent

disability to the leg. The case will be remanded to the trial court for a determination of the percent of disability to the leg.

Respondent contends that the trial court erred in fixing the compensation at $42.50 per week.

■ At the time of the accident claimant was employed by respondent as an oilfield pumper earning $210.00 per month. He was also employed by the owner of a second oil lease earning, as an oilfield pumper, $285.00 per month. His monthly salary from both jobs was $495.00 and his yearly salary was $5,940.00. Divided by 52 his average weekly earnings were approximately $114.12, establishing his Workmen's Compensation rate to be the maximum of $42.50 per week. Respondent contends that the monthly salary of $285.00 paid claimant for pumping the second oil lease should not have been included in calculating the compensation rate. We held to the contrary in Geneva-Pearl Oil and Gas Co. v. Hickman, 147 Okl. 283, 296 P. 954 (1931) in a case wherein the facts involved were identical with those presented here. In *Hickman* an oilfield pumper was pumping two oilfield leases for separate parties. We held that his compensation rate should be calculated on his earnings from both jobs.

Respondent cites Max E. Landry, Inc. v. Treadway, Okl., 421 P.2d 829 (1966). In *Treadway* the claimant was employed on a full-time basis by the telephone company at a salary of $325.00 per month. She did extra work for a second party on a basis of $1.25 per hour. She sustained injuries in a fall while entering the place of business of the second employer. It was not shown the work for both employers is similar or identical as 85 O.S.1961, § 21 is construed in *Hickman*. The distinction between *Treadway* and the present case is apparent.

■ Lastly respondent contends that the evidence is insufficient to establish that claimant was temporarily disabled or temporarily partially disabled.

Claimant testified that he was in the hospital under the care of a doctor for 36 days after the accident. He returned to work for respondent on July 22, 1968 in a supervisory capacity. Respondent paid claimant his regular salary while off work but claimant paid this salary to a relief pumper who did all the work for approximately 3 months. Claimant has been unable to perform his work as a pumper at the second oil lease where he had previously earned $285.00 per month.

Dr. M examined the claimant on August 29, 1968 and Dr. F examined him on August 30, 1968. Both doctors find the claimant to have disabling scars on his left leg and foot interfering with his walking. Dr. F finds that claimant "will be limited in the use of the extremities for manual labor as he will have to stop and rest and elevate the extremity at frequent intervals."

The order of the trial court terminates the payment of temporary disability on September 3, 1968, or within a period of 4 days after the examinations made by both doctors.

We held in Fullart Maytag Company v. Stapleton, Okl., 356 P.2d 350, 355 (1960) that "a physician does not have to give testimony categorically, but that the general tenor and intent of such testimony is the controlling consideration." The "general tenor and intent" of the reports of the two examining doctors together with the testimony of the claimant sustains the finding of the trial court that claimant was temporarily disabled to and including September 3, 1968.

The award of the State Industrial Court is sustained in all particulars except the award for permanent partial disability; the award for permanent partial disability is vacated and the case is remanded to the State Industrial Court with directions to conduct further proceedings to determine the percent of disability to the left leg.

All the Justices concur.