IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

IN RE THE ADOPTION OF A.R. JR., A.R., AND A.R.

Nos. 2 CA-JV 2016-0102 and CA-JV 2016-0106 (Consolidated)
Filed December 27, 2016

Appeal from the Superior Court in Pima County
No. B25793
The Honorable Jane Butler, Judge Pro Tempore

**AFFIRMED**

COUNSEL

MyersStrickland, PLLC, Tucson
By Heather M. Strickland
*Counsel for Appellant*

Doris M. Reed, Tucson
*Counsel for Minors*

Alfred Urbina, Pascua Yaqui Tribe Attorney General
By Tamara R. Walters, Assistant Attorney General, Tucson
*Counsel for Pascua Yaqui Tribe*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

V Á S Q U E Z, Presiding Judge:

**¶1**        Appellants Antonio and Joyce Urbina in January 2016 filed a petition to adopt the children, A.R. Jr., A.R., and A.R., born July 2005, December 2007, and November 2008.  The Urbinas are paternal cousins of the children and took custody of them in September 2013.  The children are Indian children as defined by the Indian Child Welfare Act (ICWA).  Their father relinquished his parental rights in September 2014, and the parental rights of the children's mother were terminated in June 2015, after a contested severance proceeding.  The Arizona Department of Child Safety consented to the adoptions as well.

**¶2**        On the date set for the adoption hearing, however, Joyce suffered a stroke and the hearing was vacated.  Joyce died a few weeks later.  Following her death, Antonio, joined by the Pascua Yaqui Tribe, which had intervened in the matter at the time of the hearing, filed a motion to allow Joyce to posthumously adopt the children.  They explained the children regarded Joyce as their mother and they wanted the birth certificates to show her as their mother.  Additionally, they contend that the children's psychological well-being will be harmed if the adoption is not approved posthumously because the designation for mother will be listed as "unknown."  They state this will diminish the personal and familial roles assumed by Joyce and will force the children in the future to relive the trauma of the dependency when they must explain why their mother is "unknown."  The juvenile court denied the motion, as well a subsequent motion for reconsideration.

**¶3**        Antonio, the children, and the Pascua Yaqui Tribe challenge the juvenile court's order denying the motion in a joint brief.  Appellants contend the court abused its discretion in failing to set a hearing, make factual findings as to the children's best interests, or exercise its equitable powers to grant the motion.  Their appeal is unopposed.  "We review an adoption order for an abuse of discretion, and issues of law, including statutory interpretation, de novo."  *David C. v. Alexis S.*, 240 Ariz. 53, ¶ 8, 375 P.3d 945, 947 (2016) (citation omitted).

¶4        Because adoption did not exist at common law, "adoption statutes should receive strict construction, particularly respecting the court's jurisdiction." *In re Maricopa Cty. Juv. Action No. A-25646*, 130 Ariz. 589, 590, 637 P.2d 1092, 1093 (App. 1981). And, because an adoption proceeding is a statutory action, the juvenile court's power is limited to that granted by statute. Thus, "equity is invoked in aid of the execution of the statute," and any "authority not expressly given by statute cannot . . . be assumed." *Van Ness v. Superior Court*, 69 Ariz. 362, 365, 213 P.2d 899, 900 (1950).

¶5        Section 8-119, A.R.S., sets forth the procedure to follow upon the death of a petitioner. It provides, "In the event of the death of the petitioner, the petition for adoption shall be dismissed, except where there are two petitioners and one of the petitioners dies the proceeding shall continue unless withdrawn by the surviving petitioner." According to the plain language of the statute, a petition filed by a sole petitioner must be dismissed upon the death of the petitioner. If, as is the case here, a petition is filed by two petitioners and one dies, the survivor may either proceed as the sole petitioner or withdraw the petition. Appellants nevertheless argue that because this statute "does not expressly prohibit posthumous adoptions," we should read it to allow a deceased petitioner to adopt.

¶6        Arizona's adoption statutes, however, set forth the persons who may adopt and be adopted. Specifically, A.R.S. § 8-103(A), (B) provides that "[a]ny adult resident" and under certain circumstances "[a]n adult nonresident" may adopt a child. "Adult" is defined as "a person eighteen years of age or older." A.R.S. § 8-101(1). The statute does not define "resident," but that term is commonly defined as "[o]ne who resides in a particular place permanently or for an extended period." *The American Heritage Dictionary* 1493 (5th ed. 2011). We cannot read this statutory language, which plainly describes a living person, to encompass a petitioner who has died before an order of adoption has been entered.

¶7        In construing a statute, "[w]e consider the statute as a whole, including its context within a broader statutory scheme." *Sundevil Power Holdings, LLC v. Ariz. Dep't of Revenue*, 240 Ariz. 340,

¶ 13, 379 P.3d 236, 240 (App. 2016).  Thus, we must read § 8-119 in the context of the other provisions of the adoption statutes, which clearly anticipate a living petitioner.  We find no provision in our adoption statutes expressly allowing a posthumous adoption, and in view of the statutory definitions of adoptor and adoptee set forth in §§ 8-102 and 8-103, we cannot expand the power of the court described in § 8-119 to continue a proceeding as to a decedent.  *See Van Ness*, 69 Ariz. at 365, 213 P.2d at 900.

**¶8**　　　　In support of a contrary conclusion, appellants primarily rely on a published decision of a New Jersey superior court in which the court granted a posthumous adoption.  *See In re W.R. & L.R. for the Adoption of S.W.*, 989 A.2d 873, 875 (N.J. Super. Ct. Law Div. 2009).  The court did so, however, in reliance on a statutory provision that states, "For good cause, the court may direct the entry of judgment nunc pro tunc as of the date the action was instituted."  N.J. Stat. Ann. § 9:3-50(b); *W.R. & L.R.*, 989 A.2d at 879.  Appellants have not cited, and we have not found, a similar provision in Arizona's statutory scheme for adoption.

**¶9**　　　　Nor can we say that the juvenile court could have issued a judgment nunc pro tunc in this matter.  On this point, we find persuasive the decision of the New Mexico Court of Appeals in *In re Adoption of Bradfield*, 642 P.2d 214 (N.M. Ct. App. 1982).  In that case, the child to be adopted had died before a final hearing could be held, and the appellate court determined the trial court lacked jurisdiction to grant an adoption by entering the final order of adoption nunc pro tunc.  *Id.* at 215-18.  Consistent with Arizona law in regard to orders nunc pro tunc, the court determined that, while such an order could "cure irregularities that do not affect the jurisdiction of the court, it cannot serve to bring into existence an adoption when no adoption could in fact be deemed to have existed before."  *Id.* at 218; *see also Valley Nat'l Bank of Ariz. v. Meneghin*, 130 Ariz. 119, 124, 634 P.2d 570, 575 (1981) (explaining judgment nunc pro tunc entered only when judgment previously rendered, except when delay caused by court itself).  In this case, the judgment had not been rendered at the time of Joyce's death; indeed, the hearing required by A.R.S. § 8-115 had not yet been held.  Under such circumstances, no delay having been occasioned by the court and no

judgment previously having been filed, a judgment nunc pro tunc is not appropriate. *See Meneghin*, 130 Ariz. at 124, 634 P.2d at 575.

**¶10** As below, however, appellants argue that a posthumous adoption is permissible based on Arizona's recognition of the doctrine of equitable adoption. That doctrine, however, only enforces in equity the benefits of adoption in the context of inheritance. *See In re Estate of Lamfrom*, 90 Ariz. 363, 366-67, 368 P.2d 318, 320-21 (1962). Had the children sought to inherit from Joyce, a hearing to establish whether an equitable adoption had been created would be appropriate in the context of a probate proceeding. *See id.* But the appellants instead asked that Joyce be allowed to legally adopt the children. The doctrine of equitable adoption does not provide such a remedy. *See id.*; *see also In re Biehn's Estate*, 41 Ariz. 403, 412, 18 P.2d 1112, 1115 (1933).

**¶11** Although we empathize with the unfortunate circumstances presented in this matter, we cannot "read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). For the reasons stated, we cannot conclude the juvenile court abused its discretion.

**¶12** The order of the juvenile court is affirmed.