Submitted February 10, 2022, reversed and remanded July 26, 2023

## In the Matter of the Adoption of J. M. S., a Child.

### D. S.,
*Petitioner-Appellant.*

#### Jackson County Circuit Court
21AP00348; A176866

534 P3d 283

Mother appeals from a judgment dismissing a petition for adoption of her birth daughter by her husband, child's stepfather, who died unexpectedly before the adoption was finalized. The trial court dismissed the uncontested petition because of stepfather's death. Mother assigns error to the trial court's dismissal of the petition and urges entry of a judgment for posthumous adoption because the adoption is in child's best interest. *Held*: ORCP 34 applies to adoption petitions, and accordingly, when a petitioner dies, the court shall, on motion, allow the action to be continued by the party's personal representative or successors in interest. The trial court erred in dismissing the petition, because the dismissal prevented mother from moving for substitution as stepfather's personal representative and continuing the action in that capacity.

Reversed and remanded.

Benjamin M. Bloom, Judge.

Cyril Rivera Neeley filed the brief for appellant.

Before Ortega, Presiding Judge, and Lagesen, Chief Judge, and Powers, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this adoption proceeding, mother appeals from a judgment dismissing a petition for adoption of her birth daughter, J, by her husband, J's stepfather, who died during the pendency of this action. Mother and stepfather filed a joint petition for stepfather to adopt J, but stepfather died unexpectedly before the adoption was finalized. The trial court dismissed the uncontested petition because of stepfather's death. On appeal, mother assigns error to the trial court's dismissal of the petition and asks that we enter a judgment for a posthumous adoption because the adoption is in J's best interest. As explained below, the trial court erred in dismissing the petition because the dismissal prevented mother from moving for substitution as stepfather's personal representative and continuing the action in that capacity. Accordingly, we reverse and remand.

The uncontested facts are mainly procedural. Mother and stepfather filed an unopposed joint petition for stepfather to adopt J, his stepdaughter and mother's birth daughter.[1] Days after the petition was filed, however, stepfather suddenly died of colon cancer before the trial court acted on the petition. Mother alerted the Department of Human Services (DHS) of the petition for adoption and stepfather's death, and DHS notified the court and deferred any decisions regarding finalization of the adoption to the court. *See* ORS 109.285(5)(a) (requiring that a petitioner serve copies of the petition for adoption upon the DHS director); ORS 109.276(8)(a)(A) (requiring DHS to "investigate and file for the consideration of the judge before whom the petition for adoption is pending a placement report containing information regarding the status of the child and evidence concerning the suitability of the proposed adoption"). Mother subsequently filed a motion to enter judgment for the adoption of J

---

[1] Although mother joined the petition, it is not clear that she was a proper party to the petition. *See* ORS 109.041(2) ("When a person has been or shall be adopted in this state by a stepparent, this section shall leave unchanged the relationship, rights and obligations between such adopted person and *** natural parent of the adopted person, who is the spouse of the person who adopted the person ***."). We need not address that issue, however, because mother could be substituted as stepfather's personal representative as explained more fully below.

notwithstanding stepfather's untimely death. In her declaration in support of the motion, mother provided information as to the emotional and financial benefits that granting the adoption would provide to J, a letter from J's therapist, and a letter from stepfather's parents in support of granting the posthumous adoption. Mother also stated that she was "the representative for [stepfather's] estate and he ha[d] no possessions or assets to probate." Mother did not formally make a motion under ORCP 34 for substitution as stepfather's personal representative; however, she submitted a proposed order to the trial court that included an option for the court to appoint mother as stepfather's personal representative. The court denied mother's motion for entry of judgment and implicitly rejected the option to appoint her as a personal representative. Shortly thereafter, the court entered a general judgment of dismissal that concluded: "Based on the fact that [stepfather] passed away on 03/28/2021, the court orders this case dismissed." Mother timely appeals.

On appeal, mother appears to presume that she is a proper party and that the petition continues despite stepfather's death. She urges us to hold that trial courts have the authority to grant posthumous and equitable adoptions because doing so is in the best interests of the child. Despite raising the issue in the proposed order to the trial court, she does not address substitution as a personal representative or whether the petition "survives or continues" under ORCP 34 and proceeds directly to her argument that posthumous and equitable adoptions are in the best interests of the child.

As an initial matter, because mother has not been substituted as the personal representative for stepfather's estate, we consider the question of whether we have jurisdiction to hear mother's appeal. *See Varde v. Run! Day Camp for Dogs, LLC*, 309 Or App 387, 390, 482 P3d 795 (2021) (noting our independent obligation to consider jurisdictional issues). Stepfather's death occurred before entry of a final order or judgment and before mother's initiation of this appeal. Generally, when a party dies before the entry of a final order and before an appeal is taken, the appellate courts have no jurisdiction of the estate and its personal representative unless a personal representative is substituted as a party and receives notice of the substitution.

*Bisbee v. Mallicott*, 293 Or 797, 799, 653 P2d 239 (1982); *see generally Ramirez v. Lembcke*, 191 Or App 70, 76, 80 P3d 510 (2003) (explaining that "an action cannot be maintained against a deceased person"); *Worthington v. Estate of Milton E. Davis*, 250 Or App 755, 764, 282 P3d 895, *rev den*, 352 Or 565 (2012) (explaining the differences between a decedent and the personal representative of a decedent's estate). ORCP 34 provides an exception to the general rule; however, mother has not been substituted as the personal representative for stepfather's estate. As explained more thoroughly below, because the answer to the jurisdictional question is intertwined with whether the adoption petition "survives or continues" as provided by ORCP 34, we turn to that issue.

ORCP 34 governs whether an action abates upon the death of a party or whether a deceased party's personal representative may continue the action. It provides, in part:

> "A   Nonabatement of action by death, disability, or transfer. No action shall abate by the death or disability of a party, or by the transfer of any interest therein, if the claim survives or continues.

> "B   Death of a party; continued proceedings. In case of the death of a party, the court shall, on motion, allow the action to be continued:

> "B(1)   By such party's personal representative or successors in interest at any time within one year after such party's death[.]

> "* * * * *

> "G   Procedure. The motion for substitution may be made by any party, or by the successors in interest or representatives of the deceased party or the party with a disability, or the successors in interest of the transferor and shall be served on the parties as provided in Rule 9 and upon persons not parties in the manner provided in Rule 7 for the service of a summons."

(Boldface omitted.)

As the text of ORCP 34 provides, an action does not abate upon the death of a party "if the claim survives or continues." Importantly, ORCP 34 A relates only to the procedural question of abatement and incorporates relevant

substantive law to determine if the claim survives or continues. *See* Council on Court Procedures, Staff Comment to Rule 34, *reprinted in* Frederic R. Merrill, *Oregon Rules of Civil Procedure: A Handbook* 72 (1981) ("The words, 'if the claim survives or continues,' were added to the first sentence of section 34 A. to make clear that this rule relates only to the procedural question of abatement of the action."). Thus, we look to the "relevant substantive law" to determine if a cause of action survives or continues despite the death of a party. *See, e.g.*, *Nationstar Mortgage, LLC v. Hinkle*, 321 Or App 300, 307, 516 P3d 718 (2022) (so stating).

Under some circumstances, the legislature has directly addressed the possibility of the death of a party within the statutory framework. *See, e.g.*, ORS 30.075(1);[2] ORS 115.305.[3] In the absence of a statute or case law addressing whether a claim or action survives or continues, we have looked to persuasive authority from other jurisdictions when it is useful to our analysis to do so. *See, e.g.*, *Drucker v. Drucker*, 7 Or App 85, 86, 488 P2d 1277, *rev den* (1971) (considering the weight of authority from other jurisdictions in determining whether the court retained jurisdiction to award attorney fees after the death of one spouse abated divorce proceedings).[4] Similarly, the Supreme Court has

---

[2] ORS 30.075(1) provides:

"Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within the limitations established in ORS 12.110 by the injured person and continued by the personal representatives under this section, or within three years by the personal representatives if not commenced prior to death."

[3] ORS 115.305 provides:

"All causes of action or suit, by one person against another, survive to the personal representative of the former and against the personal representative of the latter."

[4] In *Drucker*, we cited authority from other jurisdictions in support of our conclusion that the death of a spouse abates divorce proceedings in which no decree has been entered. 7 Or App at 86 ("By the weight of authority in most jurisdictions, upon the death of one of the parties divorce proceedings are abated if no decree has been entered."). Then, in the absence of any Oregon statute or case to the contrary, we again looked to useful authority from other jurisdictions in support of our conclusion that the court did not retain jurisdiction to award attorney fees after the spouse's death, *i.e.*, the proceeding to award attorneys' fees

considered cases from other jurisdictions when determining whether the right to alimony survives the death of a party. *Shields v. Bosch, Executor*, 190 Or 155, 158-59, 224 P2d 560 (1950) (citing *Lemp v. Lemp*, 62 Nev 91, 141 P2d 212 (1943), for the proposition that "the right to alimony is strictly a personal right as distinguished from a property right, and a cause of suit therefor does not survive to the personal representatives of a deceased person; death terminates the right" and citing *Mignot v. Mignot*, 187 Or 142, 147, 210 P2d 111 (1949), for the proposition that some alimony awards may be property rights that do not abate upon a party's death).

The statutory framework governing adoption petitions yields no textual or contextual clues as to the legislature's intent on whether a petition for adoption survives or continues despite the death or disability of a party petitioning to adopt a child. *See generally* ORS 109.266-109.410. The legislature has, however, made clear that the statutory framework focuses on the child, and in particular, the child's best interests. *See* ORS 109.350(1). We also are not aware of any other statutes or Oregon case law that either allows or precludes the adoption petition's survival or continuation as provided by ORCP 34. We thus proceed to examine persuasive authority from other jurisdictions because we find it useful to our determination of whether an action for adoption survives or continues when a party petitioning to adopt the child has died.

A number of other jurisdictions have addressed the related questions of whether an adoption proceeding continues or survives despite the death of a prospective adoptive parent or adoptee, whether posthumous adoptions are permissible, and whether proceedings to vacate adoptions abate upon the death of an adoptive parent. On the one hand, some jurisdictions either prohibit posthumous adoption outright, abate adoption proceedings upon the death of a prospective parent or adoptee, abate proceedings to vacate adoptions upon the death of the adoptive parent, or some

---

abated. *Id*. at 90 ("We are not unaware that the cases cited are from other states and based on other statutes. However, we do not find language in the Oregon statutes or cases which suggest that a court, in a situation such as we have here, may retain jurisdiction after abatement.").

combination thereof.[5] On the other hand, other jurisdictions have concluded that a prospective adoptive parent's death does not abate the adoption proceeding and that the adoption proceeding may be continued such that the court has an opportunity to evaluate the petition and grant the adoption if the court finds that doing so is in the best interest of the child. *See, e.g.*, *In re W. R. ex rel S. W.*, 412 NJ Super 275, 277, 989 A2d 873, 875 (2009) (applying NJ Stat Ann § 9:3-50(b) (1994) and concluding that an adoption can be granted *nunc pro tunc*, effective the date of the filing of the complaint for adoption, when the adoptive parent has died prior to the final adoption hearing); Haw Rev Stat Ann § 578-11 (1976).[6] Ultimately, we conclude that the examples from the latter jurisdictions are more persuasive because they allow an opportunity for the court to reach the question of what is in the child's best interest.

Although we acknowledge that adoption is "purely a creation of statute," *W. E. F. v. C. L. M.*, 229 Or App 591, 594, 213 P3d 580 (2009), and that Oregon lacks the same express statutory authority that grounds the approach of the jurisdictions that allow adoption proceedings to continue despite the death of a prospective adoptive parent, we conclude that an adoption petition "survives or continues" under ORCP 34. That conclusion effectuates what we have recognized as the "primary purpose" of an adoption proceeding: "the

---

[5] *See, e.g.*, Ariz Rev Stat Ann § 8-119 (1970); *In re Adoption of A. R.*, 241 Ariz 356, 358, 387 P3d 1285, 1287 (Ariz Ct App 2016) (interpreting Ariz Rev Stat Ann § 8-119 (1970), as not allowing posthumous adoption); *Jahnke v. Jahnke*, 526 NW2d 159, 161 (Iowa 1994) (analogizing between the personal nature of adoption and marriage dissolution and concluding that a proceeding to vacate an adoption abates upon the death of an adoptive parent); *Johnson by Johnson v. Wilbourn*, 781 SW2d 857, 862 (Tenn Ct App 1989) (concluding that adoption statute does not permit the survival of an adoption proceeding after the death of the prospective parent or authorize a posthumous order approving an adoption); *Korbin v. Ginsberg*, 232 So 2d 417, 418 (Fla Dist Ct App 1970) ("It is a personal relationship created between one capable of adopting and one capable of being adopted, and it necessarily requires that both the adopting parent and the adopted child be living at the time such relationship comes into being by judicial decree.").

[6] Haw Rev Stat Ann § 578-11 (1976) provides:

"Notwithstanding the death of a petitioner or the petitioners during the pendency of the petition, the court, if it finds that the best interests of the individual to be adopted will be served thereby, and, in the case of a surviving petitioner, that such petitioner so desires, may enter a decree of adoption as prayed for in the petition, effective as of the date of the filing of the petition."

protection and promotion of a child's best interest." *F. v. C.*, 24 Or App 601, 608-09, 547 P2d 175, *cert den*, 429 US 907 (1976) (internal quotation marks omitted). That is, an adoption proceeding that continues despite the petitioner's death allows for another party to move for substitution as a personal representative and continue the petition in that capacity, ultimately allowing the court the opportunity to determine if adoption is in the child's best interest. Although the text of ORS 109.350(1), which outlines when a judgment of adoption is proper, refers to the petitioner in the present tense, which necessarily assumes that the petitioner is alive at the time of adoption, there is nothing in the text or context of the statutory framework that affirmatively prohibits posthumous adoption.[7] *See also* ORS 109.268(1) ("The rule that statutes in derogation of common law are to be strictly construed does not apply to the adoption laws of this state."). Accordingly, we conclude that an adoption proceeding survives or continues despite the death of a petitioner seeking to adopt because doing so effectuates the primary purpose of an adoption proceeding: the protection and promotion of the child's best interest.

Therefore, we proceed from an understanding that a petition for adoption survives or continues despite the death or disability of the party petitioning for adoption. As applicable here, when a party who petitioned to adopt a child died before that petition has been resolved, the relevant provisions of ORCP 34 apply. That is, as provided by ORCP 34 G, the court shall allow "any party, or *** the successors in interest or representatives of the deceased party or the party with a disability" to move for substitution and then, consistent with ORCP 34 B, "on motion, allow the action to be continued *** [b]y such party's personal representative *** at any time within one year after such party's death."

---

[7] ORS 109.350(1) provides:

"If, upon a petition for adoption or readoption duly presented and consented to, the court is satisfied as to the identity and relations of the persons, that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption or readoption be effected, a judgment shall be made setting forth the facts, and ordering that from the date of the judgment the child, to all legal intents and purposes, is the child of the petitioner."

Having resolved that ORCP 34 applies to adoption proceedings, we return to the jurisdictional question. In considering that question, we examine two informative cases: *Bisbee* and *Castro v. Ogburn*, 140 Or App 122, 914 P2d 1 (1996). As noted above, *Bisbee* explained the general rule that when a party dies before the entry of a final order and before an appeal is taken, an appellate court does not have jurisdiction over the estate and its personal representative unless a personal representative is substituted as a party and receives notice of the substitution. *See Bisbee*, 293 Or at 799. In *Castro*, however, we explained that an appellate court has jurisdiction to review whether the trial court erred in denying a party the opportunity to substitute a personal representative and subsequently dismissing a case for failure to timely substitute a personal representative.

In *Castro*, the plaintiff brought a suit against the defendant, Ogburn, who died shortly after the action was commenced. 140 Or App at 124. A personal representative for Ogburn was appointed, but not substituted in the suit. *Id*. at 124-25. Nevertheless, the personal representative participated in the suit, which proceeded to trial. *Id*. at 125. On the morning of trial, more than a year after Ogburn's death, the personal representative moved to dismiss the case because the plaintiff had not timely moved to substitute the personal representative as a party. *Id*. at 126. The trial court allowed the plaintiff to brief the issue, and the plaintiff filed a memorandum and a motion to allow her to amend the complaint to name the personal representative as a party and to allege his timely substitution. *Id*. The trial court apparently did not rule on the plaintiff's motion to amend the complaint; instead, the court granted the personal representative's motion to dismiss for failure to timely substitute a personal representative and dismissed the case with prejudice. *Id*. The plaintiff appealed, and we reversed.

On appeal, the personal representative relied on *Bisbee* to argue that this court lacked jurisdiction to hear the appeal because Ogburn had died and the personal representative had not been substituted within a year of Ogburn's death. *Id*. We rejected that jurisdictional argument, reasoning that, since the period for timely substitution had passed, there would be no procedure for the plaintiff to challenge

the trial court's ruling—which denied the plaintiff the opportunity to amend her complaint to substitute the personal representative for Ogburn—if this court lacked jurisdiction to consider that ruling. *Id*. at 127. In so concluding, we relied on *Mendez v. Walker*, 272 Or 602, 538 P2d 939 (1975), as an example of an appellate court having jurisdiction "to decide whether the trial court had erred in denying the plaintiff's motion to substitute the personal representative of the defendant's estate as defendant." *Castro*, 140 Or App at 127. On that basis, we concluded that we had jurisdiction to decide the issue of whether the trial court erred in dismissing the action on the basis that the plaintiff had not substituted Ogburn's personal representative despite that personal representative's voluntary appearance in the action. *Id*. We further concluded that Ogburn's personal representative "had made himself the party defendant and, by doing so, has waived the limitation on the time within which he could be substituted as the defendant and has waived any claim that the court lacks jurisdiction over him." *Id*. at 129-30. Finally, we reversed and remanded for the parties and the trial court to decide who should be named as Ogburn's personal representative. *Id*. at 130.

This case presents a similar situation to *Castro*. Although it appears at first blush that, consistent with *Bisbee*, we do not have jurisdiction to hear mother's appeal because she has not been substituted as stepfather's personal representative, this case is more akin to *Castro*, in which the trial court's ruling deprived mother of the opportunity to move for substitution. Given that the period for timely substitution has passed, if we lack jurisdiction to consider whether the trial court erred when it dismissed the case and therein effectively denied mother the opportunity to move for substitution as a personal representative for stepfather, then mother will have no procedure to challenge the trial court's judgment. That is the very result we rejected in *Castro. Id*. at 127 ("[T]here would be no procedure for plaintiff to challenge that ruling if this court lacked jurisdiction to consider it."). Moreover, such a situation would place mother into a catch-22 by requiring that mother be substituted as stepfather's personal representative in order to appeal the very judgment that denied her

the opportunity to move for substitution, *i.e.*, that prevented her from being substituted as stepfather's personal representative. To avoid that situation, and consistently with our analysis in *Castro*, we conclude that we have jurisdiction at least to consider if the trial court erred in dismissing the case and therein denying mother the opportunity to move for substitution. *Cf. Trotts and Trotts*, 170 Or App 714, 717 n 2, 13 P3d 1035 (2000) (explaining that, in a divorce action, the trial court effectively denied the personal representatives' motion for substitution pursuant to ORCP 34 when it entered a judgment dismissing the dissolution action without ruling on that motion for substitution and that that denial was appealable).

In summary, ORCP 34 applies to adoption petitions. When a petitioner dies, pursuant to ORCP 34, the court shall, on motion, allow the action to be continued by the party's personal representative or successors in interest. That is, the adoption petition does not automatically abate. Because the trial court dismissed the petition, thereby depriving mother of the opportunity to be substituted as personal representative of stepfather's estate, the trial court erred. Accordingly, we reverse and remand to allow mother the opportunity to move for substitution as allowed by ORCP 34.

On remand, the trial court will be able to determine whether mother (or any other party consistent with ORCP 34) can be substituted as stepfather's personal representative, and the trial court—assuming that the party is granted substitution—will be able to reach the merits of the petition to evaluate whether the proposed adoption meets the requirements set out in ORS 109.350. That is, the trial court will be able to effectuate what we have recognized and reaffirm as the primary purpose of an adoption proceeding: the protection and promotion of the child's best interest. The prospective adoption, in our view, is about the bond that J and stepfather had and about the potential for J to be recognized in the eyes of the law as part of stepfather's family, which lasts beyond his untimely death.

Reversed and remanded.