William Gene BROOKS et al., Appellants,

v.

The STATE of Oklahoma, Appellee.

No. M–76–234.

Court of Criminal Appeals of Oklahoma.

March 8, 1977.

Rehearing Denied March 25, 1977.

138

Charles W. Stubbs, Stubbs, Stiner & Pace, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellants, William Gene Brooks, Joe Brooks and Jim Brooks, hereinafter referred to as defendants, were charged in the District Court of Kiowa County, Case No. CRM–75–222, with the crime of Assault and Battery Upon a Police Officer in violation of 21 O.S.1971, § 649. They were tried by a jury, convicted, and their punishments were fixed at a fine of Four Hundred ($400.00) Dollars and imprisonment in the

County jail of Kiowa County for a period of one hundred and eighty (180) days. From these judgments and sentences, a timely appeal has been perfected.

The State's first witness, Dennis Binghom, who lived across the road from Elmwood Manor Apartments in Hobart, Oklahoma, testified that on September 30, 1975, between 11:00 and 11:30 p. m., he heard "squealing tires" and looked out the window to see two cars exiting the parking lot at a high rate of speed. He added that it was possible that one of these cars returned to the parking lot.

The State's next witness, Frankie Anderson, who lived in the Elmwood Manor Apartments, testified that on the night in question at about 11:30 p. m. she heard an altercation and heard someone say "You're under arrest." Upon looking out the window, she saw James Christian, the complaining witness, engaged in a struggle with three individuals. She then called the police. Subsequently she saw Mr. Christian with blood streaming down his face.

The State then called Donnie Felter, another resident of Elmwood Manor Apartments. He testified that on the night in question around 11:00 p. m. he heard a squealing of tires and later heard an altercation outside. He looked out to see James Christian engaged in a struggle with the defendants. He also heard one of the defendants say "I can't hit a cop; I'm on parole." When this witness went down to help, Mr. Christian had one of the defendants handcuffed and the others were running away.

The State's next witness was Sharon Felter, whose testimony substantially corroborated that of her husband's.

The State then called Mary Christian, the wife of the complaining witness, James Christian. Her testimony substantiated her husband's testimony which follows.

The State's final witness was James Christian, Assistant Chief of Police of the Hobart Police Department. He testified that on September 30, 1975, at approximately 11:30 p. m., he heard tires squealing and looked out to see two cars leaving the parking lot. He agreed with his wife that she should call the Sheriff's Office. Subsequently he saw the cars return to the parking lot and he went down to talk to the people he saw getting out of the cars. He took along two sets of handcuffs in case it was necessary to make an arrest; however, he was not in uniform.

He encountered William Gene Brooks and had Brooks accompany him to a point at which he engaged the other two defendants as well. He engaged them in a conversation and asked them why they were making so much noise and when they started to move away, disclaiming responsibility, he told them they were under arrest and grabbed Jim Brooks, taking him to the ground. Joe Brooks jumped in to assist and asked for help from Bill (William Gene Brooks) who at first declined, saying "I can't hit a cop; I'll go to jail," but subsequently joined in. This witness testified that he was hit and kicked several times, receiving two cuts to his face, bruised ribs, and two fractured toes.

Subsequently, two of the defendants ran away when Donnie Felter approached, but this witness did succeed in handcuffing Jim Brooks. At that time two police officers from the Hobart Police Department arrived on the scene and took custody of the prisoner.

At this point, the State rested and the defense presented its case.

The first witness for the defense was Tom Brooks, the defendants' brother, who lived at Elmwood Manor Apartments. He testified that he heard a disturbance outside his apartment and went outside to discover James Christian on top of his brother, Jim. He stated that he pulled Mr. Christian partially off and asked him what he was doing. The other two defendants were present but did not join in once they discovered that a police officer was involved. He stated that he did not strike Mr. Christian.

The defense then called Joe Brooks, one of the defendants, whose testimony substantially corroborated that of Jim Brooks whose testimony follows.

Jim Brooks testified that while en route from his car to his brother's apartment, he was approached by James Christian, who yelled something about reckless driving, took him to the ground, and began to choke him with his arm. The witness said he yelled for help from his brothers who had gone on ahead. They returned and Bill attempted to pull Mr. Christian off but when he saw that his brother's assailant was a police officer he declined to render additional assistance. He testified that at no time did he or any of his brothers strike James Christian. He denied that he was involved in disturbing the peace on the night in question but added that upon arriving they noticed two cars departing at a high rate of speed.

The next witness for the defendant was Patty Brooks, wife of Joe Brooks. She testified that she was visiting her mother who was staying at Elmwood Manor Apartments. Her testimony substantially corroborated that of Jim Brooks and Joe Brooks.

The defense then called Nancy Funky, mother of Patty Brooks, who testified that she had a conversation with James Christian on October 8, 1975, in which he stated that Jim Brooks made him mad and he got into a "hassle" with him and that while Jim's brothers were trying to pull him off he was struck. She further testified that he stated it was pretty dark and they might not have recognized him.

The last two witnesses for the defense were Belinda Smith, Tom Brooks' girl friend, and Don Jackson, who among others were visiting at Tom Brooks' apartment. Their testimony substantially corroborated that of Tom Brooks.

James Christian took the stand in rebuttal and admitted seeing Mrs. Funky on October 6, but denied exchanging more than a greeting.

■ The defendants' first assignment of error is that the trial court should not have allowed the jury to consider the charge of assault and battery on a police officer. They base this contention on the fact that 21 O.S.1971, § 649, under which the defend-ants were convicted, requires that the officer "be in performance of his duties as a police officer." And, in this case, James Christian was off duty. However, it is the belief of this Court that any time a police officer, whether in uniform or not, takes it upon himself to enforce the law in order to maintain peace and order for the general benefit of the public, he is acting in the performance of his duties as a police officer.

■ It is true that this Court in *Stewart v. State,* Okl.Cr., 527 P.2d 22 (1974), held that when an off duty police officer is engaged in private employment he becomes a "private citizen." In such case, he is acting primarily in furtherance of his own private benefit. However, the present case is clearly distinguishable. Officer Chistian, although off duty, was not acting under the employ of a private enterprise but was acting for the benefit of the public in general with the aim of maintaining peace and order.

■ This Court is in agreement with 6A C.J.S. Assault and Battery § 81, which states:

". . . An officer who makes a lawful arrest while 'off duty' from his regular police department job may still be regarded as an officer engaged in the performance of his duties. . . ." (Footnote omitted)

This Court does not stand alone in this agreement. In *Simms v. State,* 167 Tex.Cr. 315, 319 S.W.2d 717 (1958), the Texas Court of Criminal Appeals held that an off duty police officer who was assaulted when he stopped to assist a motorist who was himself being assaulted was in the performance of his duties as a police officer.

For the above reasons, we find the defendants' first assignment of error to be without merit.

■ The defendants' second assignment of error is that the trial court should have sustained the demurrer to the evidence or motion for directed verdict of acquittal since the defendants were merely resisting an illegal arrest. The defendants base their contention of an illegal arrest upon the

assertion that the crime, a misdemeanor, was not committed in Officer Christian's presence as required by 22 O.S.1971, § 196, which reads as follows:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

This Court cannot agree with this contention.

Upon review of the record, it appears that the offense of disturbing the peace was committed in the presence of Officer Christian. According to Officer Christian, he observed the defendants' vehicle being operated in such a manner that it resulted in a disturbance of the peace, both when exiting the parking lot and when re-entering it. He recognized the defendants when they got out of the car and when he went down to make inquiry they acted in concert in their denial that they were occupants of the offending vehicle, whereupon Officer Christian arrested them. This Court finds that Officer Christian had adequate reason to believe that all the defendants were acting in concert in the commission of the misdemeanor, disturbing the peace, which was committed in his presence, and therefore was engaged in a legal arrest when assaulted by the defendants. See, 21 O.S.1971, § 28, which states:

"Whenever an act is declared a misdemeanor, and no punishment for counseling or aiding in the commission of such act is expressly prescribed by law, every person who counsels or aids another in the commission of such act, is guilty of a misdemeanor, and punishable in the same manner as the principal offender."

For the above reasons this Court finds that the defendants' second assignment of error is without merit.

 The defendants' final assignment of error is that the testimony in regard to one of the defendants' statement during the assault was inadmissible and brought into issue the character of one of the defendants even though not raised by the defense. This Court recognizes the general rule that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and evidence of other crimes should not be admitted. This Court has also recognized various exceptions to this rule, which are that such evidence tends to establish: (1) motive; (2) intent; (3) the absence of a mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and, (5) the identity of a person charged with the commission of the crime on trial. See, *Young v. State,* Okl.Cr., 446 P.2d 79 (1968). And this Court has generally held that if the evidence reasonably tends to prove a material fact in issue it is not to be rejected "merely because it incidentally proves the defendant guilty of another crime." *Harris v. State,* Okl.Cr., 450 P.2d 857 (1969).

 Moreover, it is to be observed that the utterance of William Gene Brooks was part of the res gestae and, therefore, admissible in evidence.

For the above and foregoing reasons, this Court AFFIRMS the judgment and sentence of the court below.

BUSSEY, P. J., concurs.

BRETT, J., dissents.