2013 OK 95

**CATTLEMEN'S STEAKHOUSE, INC., and Starnet Insurance Co., Petitioners,**

v.

**John David WALDENVILLE, Oklahoma County Sheriff's Department, Oklahoma County (Own Risk # 14772), and The Workers' Compensation Court, Respondents.**

No. 111562.

Supreme Court of Oklahoma.

Nov. 12, 2013.

Jeffrey D. Nachimson, Pierce, Couch, Hendrickson, Baysinger & Green, LLP, Oklahoma City, Oklahoma, for petitioners.

Bruce V. Winston, James C. Ferguson, Walker Ferguson & Ferguson, Oklahoma City, Oklahoma, for respondent, Oklahoma County.

W.C. Doty, The Bell Law Firm, Norman, Oklahoma, for respondent, John David Waldenville.

WATT, J.

¶ 1 We retained this cause to address two issues. The first is whether a political-subdivision employer may be required to provide workers' compensation benefits to an

off-duty employee injured while providing services to a private entity. Second, we are asked whether, under the facts presented, the claimant's salaries from his full-time employment as a deputy sheriff and his part-time job as a security officer may be combined when determining the amount of benefits to which the employee is entitled.[1]

¶2 The answer to the first question is controlled by the plain, clear, unmistakable, unambiguous, mandatory, and unequivocal language of 85 O.S.2011 § 313(G)[2] providing that private employers, hiring off-duty municipal employees, alone shall be responsible for the payment of workers' compensation benefits arising from incidents occurring during the hours of actual employment by the private employer. The second issue requires that we determine whether the claimant's private sector employment was the same or similar to that of his duties as a deputy sheriff.[3] Here, the employee drove an official cruiser to the job site, was dressed in uniform, and was carrying his badge and personal sidearm while engaged in transporting, on foot, his employer's money to a local night depository. Waldenville was shot in the head and so severely injured that he could not give chase. Under these unique facts, we determine that the employee's two salaries should be combined for the purpose of determining benefits. The clear weight of the evidence and the overwhelming majority of extant jurisprudence support the conclusion that, while acting as a security guard for the employer, the claimant was engaged in an employment substantially the same or similar to his duties as a Deputy Sheriff.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 21, 2011d Waldenville was delivering a night deposit to UMB Bank for Cattlemen's when he was ambushed, shot in the head, and robbed of two (2) money bags.

1. This Court does not issue advisory opinions or answer hypothetical questions. *Ball v. Wilshire Ins. Co.*, 2007 OK 80, fn. 3, 184 P.3d 463; *Scott v. Peterson*, 2005 OK 84, ¶27, 126 P.3d 1232. Therefore, we decline the petitioners' invitation to issue an advisory opinion addressing a constitutional issue neither raised until the filing of the Petitioners' Brief–In–Chief in this cause nor relevant to its resolution, *i.e.* whether the Legislature is prohibited from changing the standard of review in workers' compensation cases. See, *West-Oak Industries, Inc. v. DeLeon*, 2013 OK CIV APP 32, 299 P.3d 878 [Holding that workers' compensation statute directing application of a standard of review violated the separation of powers doctrine.] and *Harvey v. Auto Plus of Woodward*, 2012 OK CIV APP 92, 287 P.3d 410 [Holding that statutorily prescribed standard of review did not violate separation of powers doctrine.]. Both employer and employee agree that the applicable standard of review is against the clear weight of the evidence while Oklahoma County asserts that it is immaterial what standard applies as it is statutorily exempt from the payment of any award. We do note that the cases cited by petitioner were promulgated by the Court of Civil Appeals and neither were presented to this Court for certiorari review. [Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2011, Ch. 5, App. 1; 20 O.S.2011 §§ 30.5 and 30.14.] In *Williams Companies, Inc. v. Dunkelgod*, 2012 OK 96, 295 P.3d 1107, we held that constitutional guarantees mandated that the statutory standard of review in effect on the date of injury be applied in the workers' compensation setting.

We also need not address the employee's proposition of error concerning the trial court's exclusion of certain text messages offered to demonstrate that the Oklahoma County Sheriff had guaranteed payment of certain workers' compensation benefits. See, *State ex rel. State Ins. Fund v. JOA, Inc.*, 2003 OK 82, ¶¶7 and 23, 78 P.3d 534 [No state official, counsel for a state official, or counsel for a non-state party possesses the authority to create an estoppel, concession, or stipulation of law so as to subtract from the State's sovereign power.]; *Strong v. State ex rel. Oklahoma Police Pension & Retirement Bd.*, 2005 OK 45, ¶14, 115 P.3d 889 [The general rule is that estoppel will not lie against the government.].

2. Title 85 O.S.2011 § 313(G) providing:

"Where a person who is employed by the state, a municipality, a county, or by any political subdivisions thereof, and who, while off-duty from the employment, is employed by a private employer, the private employer alone shall be liable for compensation under the Workers' Compensation Act for any injury or death of the person arising out of and in the course of employment which occurs during the hours of actual employment by the private employer...."
The current version of the workers' compensation statute, being substantially similar to § 2(b)(G), in effect at the time of Waldenville's injury, is referred to herein. We make no comment on the Administrative Workers' Compensation Act, 85A O.S. Supp.2014 § 1, *et seq.*, scheduled to become effective February 1, 2014.

3. Title 85 O.S.2011 § 21, see note 20, *infra*.

At the time, Waldenville was employed full-time as a Major with the Oklahoma County Sheriff's Department and was working part-time for the employer as a security guard hired and paid by Cattlemen's. His regular duties as a Deputy were with the Administrative Bureau as Chief Financial Officer for the Sheriff's Office. Waldenville was also over the training division. Previously, he had been part of the SWAT team tactical unit. On the evening of the injury, the employee had permission from the Sheriff's Office to act as a security guard for Cattlemen's and other private employers.

¶ 4 When shot, Waldenville was being paid for his services by Cattlemen's and was conducting business as the employer's part-time security guard. Nevertheless, with the permission of Oklahoma County, he was wearing his Deputy Sheriff's uniform, carrying his personal sidearm, and was utilizing a County police vehicle as transportation. Waldenville's regular duties for Cattlemen's involved providing security, *i.e.* protecting vehicles from vandalism in the parking lot, ensuring that transients did not interfere with customers, escorting employees from the place of business to their cars, and making the nightly deposit at the stockyard's bank. On occasion, during the hours of his employment with the employer, Waldenville issued tickets in the area for speeding and considered himself to be an active, on-duty Deputy Sheriff with the Oklahoma County Sheriff's Department at all times.

¶ 5 On June 7, 2011, a form 3 was filed in the Workers' Compensation Court alleging Waldenville suffered an accidental personal injury arising out of his employment with Cattlemen's. When Cattlemen's denied that Waldenville was their employee, the trial court allowed the joinder of the Oklahoma County Sheriff's Department. Initially, Cattlemen's denied that they had workers' compensation insurance coverage on the employee and asserted that he was an independent contractor. On February 13, 2013, the day of trial, Cattlemen's formally acknowledged that premiums were paid to the insurance carrier based on Waldenville's salary.[4] A week later, the trial court issued an order finding that the claimant was entitled to compensation, dismissing Oklahoma County, and combining the claimant's wages from his two employments for the purpose of determining benefits.

¶ 6 Cattlemen's filed its petition for review on March 11, 2013. The motion to retain was granted on June 26th. The briefing cycle was completed with the filing of the petitioner's reply. The record was provided to this Court on July 25, 2013.

### STANDARD OF REVIEW

 ¶ 7 To the extent that we are called upon to construe the statutory language at issue herein, we are presented with a pure question of law subject to our *de novo* review without deference to the workers' compensation court.[5] The evidentiary standard of "against the clear weight of the evidence," having been in effect on the date of injury, is applicable here.[6]

¶ 8 **a) The plain, clear, unmistakable, unambiguous, mandatory, and unequivocal language of 85 O.S.2011**

---

4. Initially, Cattlemen's denied all liability for workers' compensation to the employee based on his status as an independent contractor. Although the employer continued to argue Waldenville's status as an employee versus independent contractor in testimony before the trial court, Cattlemen's attorney stipulated that Cattlemen's paid premiums to the insurance carrier on amounts of money paid to Waldenville and was, therefore, estopped from denying liability. See, 85 O.S.2011 § 357 providing:
 "Every employer and insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the workers' compensation law by reason of or upon the basis of employment of any such employee shall be estopped to deny that such employee was employed by the employer."

5. *W.R. Allison Enterprises, Inc. v. CompSource Oklahoma*, 2013 OK 24, ¶ 10, 301 P.3d 407; *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120.

6. Under 85 O.S.2011 § 340(D), the Court may modify, reverse, remand for rehearing, or set aside the order or award where: "The order or award is against the clear weight of the evidence."

§ 313(G) mandates that private employers, hiring off-duty county employees, alone shall be responsible for the payment of workers' compensation benefits arising from incidents occurring during the hours of actual employment by the private employer.

¶ 9 Cattlemen's contends that it is not liable for payment of workers' compensation to Waldenville because the employee was not an "off-duty" municipal employee for whom it would be liable to pay workers' compensation benefits pursuant to 85 O.S.2011 § 313(G).[7] Rather, the employer insists, the employee was operating in his capacity as a police officer when he was shot while safeguarding money for the night deposit. Oklahoma County argues that the employee was acting purely in his capacity as a part-time security guard for Cattlemen's and was not performing the duties of a Deputy for the Sheriff's Department. Waldenville asserts that the trial court was correct in ruling that Cattlemen's was solely liable for compensation for the injuries he sustained. We agree with both Oklahoma County's and the employee's positions.

¶ 10 The employer relies primarily on two decisions from sister jurisdictions for support of its arguments. The first, *City of Hialeah v. Weber*, 491 So.2d 1204 (D.C.Fla.1986), involved a situation where a police officer was seeking workers' compensation benefits from the City for injuries incurred by an off-duty policeman who was providing his part-time employer with security services. The *Weber* Court determined that the City was responsible for workers' compensation benefits for injuries sustained by the off-duty policeman. It did so on grounds that the actions the officer undertook, *i.e.* attempting to arrest individuals committing acts of vandalism outside the employer's private club, were such that he was performing his job as a police officer for the City when injured.

¶ 11 The second case upon which Cattlemen's relies is *State v. Wilen*, 4 Neb.App.

132, 539 N.W.2d 650 (1995). *Wilen* did not involve a claim for workers' compensation. Rather, the issue presented was whether an off-duty police officer, being paid by a private entity, was acting in her official capacity so as to support criminal charges against an individual driving his automobile toward the officer at a high rate of speed. The Nebraska Court determined that the officer was conducting herself in her official capacity and that the charge would stand.

¶ 12 Neither *Weber* nor *Wilen* support Cattlemen's contentions. *Wilen* did not involve any issue related to the payment of workers' compensation benefits, nor was the Nebraska Court called upon to distinguish between the status of the employee as either "on" or "off" duty. Rather, it recognized that the duties the officer performed for the restaurant were supplemental to her primary duties of law enforcement on behalf of the general public.

¶ 13 *Weber* is of little help. Although its facts are similar enough to appear persuasive on the employment issue, the cause does not indicate that Florida has a statute resembling 85 O.S. § 313(G) providing in pertinent part:

> "Where a person who is employed by the state, a municipality, a county, or by any political subdivisions thereof, and who, while off-duty from the employment, is employed by a private employer, the private employer alone shall be liable for compensation under the Workers' Compensation Act for any injury or death of the person arising out of and in the course of employment which occurs during the hours of actual employment by the private employer...." [Emphasis provided.]

¶ 14 The primary goal of statutory interpretation is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed by the statutory language.[8] Intent is ascertained from the whole act in light of its general purpose and objective [9] considering relevant provisions to-

---

7. Title 85 O.S.2011 § 313(G), see note 2, supra.

8. *White v. Lim*, 2009 OK 79, ¶ 12, 224 P.3d 679; *Head v. McCracken*, 2004 OK 84, ¶ 13, 102 P.3d 670; *Balfour v. Nelson*, 1994 OK 149, ¶ 8, 890 P.2d 916.

9. *Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882; *McSorley v. Hertz Corp.*, 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834.

gether to give full force and effect to each.[10] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[11] Statutes are interpreted to attain that purpose and end [12] championing the broad public policy purposes underlying them.[13] Only where the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[14] If the language is plain and clearly expresses the legislative will, further inquiry is unnecessary.[15]

¶ 15 Title 85 O.S.2011 § 313(G) is the Legislature's pronouncement on Oklahoma's public policy [16] regarding a private employer's hiring of a county employee during off-duty hours from employment with the governmental employer. Utilizing mandatory language,[17] it provides that private employers hiring off-duty county employees shall "alone" [18] be responsible for any workers' compensation benefits payable for injuries occurring during the hours of actual employment with the private entity.

**10.** *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

**11.** *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶ 5, 687 P.2d 132.

**12.** *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, *cert. denied,* 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210.

**13.** *Haggard v. Haggard,* 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶ 7, 812 P.2d 1355.

**14.** *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

**15.** *White v. Lim,* see note 8, supra; *Rout v. Crescent Public Works Auth.,* 1994 OK 85, ¶ 10, 878 P.2d 1045.

**16.** The Legislature defines Oklahoma's public policy through its statutory enactments. See, *State ex rel. Henricksen v. State ex rel. Corp. Comm'n,* 2001 OK 89, ¶ 13, 37 P.3d 835; *Todd v.*

¶ 16 The plain, clear, unmistakable, unambiguous, and unequivocal language of 85 O.S. 2011 § 313(G),[19] providing that private employers, hiring off-duty county employees, alone shall be responsible for the payment of workers' compensation benefits arising from incidents occurring during the hours of actual employment by the private employer governs this cause. We determine that, pursuant to the Legislature's pronouncement, Cattlemen's alone is responsible for payment of the off-duty municipal employee's workers' compensation benefits.

¶ 17 **b) Under the facts presented, both the clear weight of the evidence and the overwhelming majority of extant jurisprudence support a determination that the claimant was engaged in the same, or substantially similar, employment to that of his profession as a Major with the Oklahoma County Sheriff's Department when he was injured, warranting the combination of salaries for purposes of determining workers' compensation benefits.**

*Frank's Tong Serv., Inc.,* 1989 OK 121, ¶ 12, 784 P.2d 47; *Mobbs v. City of Lehigh,* 1982 OK 149, ¶ 16, 655 P.2d 547.

**17.** Generally, the use of "shall" signifies a command. *City of Midwest City v. House of Realty, Inc.,* 2008 OK 28, fn. 5, 198 P.3d 886, *cert. denied,* 556 U.S. 1257, 129 S.Ct. 2434, 174 L.Ed.2d 228 (2009); *Zeier v. Zimmer, Inc.,* 2006 OK 98, ¶ 7, 152 P.3d 861; *Cox v. State ex rel. Oklahoma Dept. of Human Servs.,* 2004 OK 17, ¶ 21, 87 P.3d 607. Nevertheless, there may be times when the term is permissive in nature. *City of Midwest City v. House of Realty, Inc.,* this note, supra; *Minie v. Hudson,* see note 11, supra; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 9, 619 P.2d 869.

**18.** Considering definitions from two different dictionaries, sister courts have determined the usage of the term "alone" to be singular and synonymous with "solely," "without any other," or "exclusively." See, *Rico v. Judson Lofts, Ltd.,* 404 S.W.3d 762 (Tex.App.2013) [Relying on the *Shorter Oxford English Dictionary* (6th ed.2007) ]; *Schenewerk v. Mid–Century Ins. Co.,* 263 S.W.3d 660 (Mo.App.2008) [Relying on *The Random House Dictionary of The English Language* (2nd ed.1987) ].

**19.** Title 85 O.S.2011 § 313(G), see note 2, supra.

¶ 18 Having determined that Cattlemen's is responsible for payment of the claimant's compensation, we now address how the award should be computed. While there is a difference of opinion on whether the claimant's employment as a Major with the Sheriff's Department and as a security guard are combinable for a determination of compensation, the employer and employee agree that 85 O.S.2001 § 21 [20] is the applicable statutory provision. The discord between Cattlemen's and Waldenville comes with their arguments of whether the two employments can be considered "the same or similar" within the meaning of the statute and the salaries combined for the purpose of determining the correct rate of compensation.

¶ 19 Title 85 O.S.2001 § 21 provides in pertinent part:

Except as otherwise provided in this act, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

(1) If the injured employee shall have worked in the employment in which he was working at the time of the accident whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of two hundred sixty times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

(2) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of two hundred sixty times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year **in the same or in a similar employment** in the same or a neighboring place shall have earned in such employment during the days when so employed.

(3) **If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment** in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was

---

**20.** Title 85 O.S.2001 § 21 providing in pertinent part:

"... (1)If the injured employee shall have worked in the employment in which he was working at the time of the accident whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of two hundred sixty times the average daily wage or salary which he shall have earned in such employment during the days when so employed.
(2) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of two hundred sixty times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.
(3) If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident...."
Title 85 O.S.2011 § 331, which replaced § 21, this note supra, retained the "same or similar" designation, providing in pertinent part:
"Except as otherwise provided in this act, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:
... 3. If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, the Workers' Compensation Court may consider average wages in the same or similar employment in the same area of the state where the injury occurred ..."
Again, we do not comment on the Administrative Workers' Compensation Act, see note 2, supra.

working at the time of the accident.... [Emphasis supplied.]

¶ 20 This statute provides the exclusive method for calculating a claimant's compensation rate. It is to be applied in the order designated by the Legislature.[21] Subsection 3 of § 21 is utilized when neither subsections 1 nor 2 can be fairly and reasonably applied.[22] Subsection 3 has been utilized when, as here, part-time or irregular employment is involved.[23] In such situations, utilization of subsection 3 allows for consideration of the employee's annual earning capacity. This calculation is fair to the employer, its insurer, and the claimant.[24] Subsection 3 is meant to provide a broad method by which the "earning capacity" of an injured employee may be determined.[25]

¶ 21 Considering a statute almost identical to the one at issue here in *Geneva–Pearl Oil & Gas Co. v. Hickman*, 1931 OK 74, 147 Okla. 283, 296 P. 954, the Court determined that the Legislature intended to make **the average weekly wages** of an injured employee at the time of the injury the basis upon which compensation should be paid. It is **the "occupation" of the employee which is the defining factor** for determining the benefits to be awarded under *Hickman.* In that case, the employee was acting as a pumper in both of his positions and the salaries from both employers were held combinable for purposes of the award of benefits. In *Fox Bldg. Supply Co. v. Bond,* 1979 OK 175, 604

P.2d 859, the Court considered *Hickman* along with other Oklahoma cases concerning the combination of wages for purposes of calculating workers' compensation benefits and determined that **employments must be identical or substantially similar before a claimant will be permitted to combine the wages paid by two employers for purposes of determining a claimant's award.**

¶ 22 The employee's regular duties while engaged in his part-time employment with Cattlemen's required him to patrol the employer's parking lot to prevent vehicles from being vandalized and to ensure the safety of patrons from transients as they entered and exited the premises. At times, Waldenville was called upon to escort servers to and from their cars when leaving with their tip monies at the end of the evening. He was also expected to make the nightly deposit. On occasion, while on duty as a security guard, the claimant issued tickets or warnings to protect the safety of customers and citizens parking across the street from the restaurant. At all times, Waldenville considered himself to be an active, on-duty Deputy Sheriff with the Oklahoma County Sheriff's Department.[26]

¶ 23 Waldenville was attacked while attempting to deliver his employer's property to the night depository. **It cannot be denied that the protection of both public and private property falls within the ambit of a**

**21.** *Wal–Mart Stores, Inc. v. Switch,* 1994 OK 59, ¶ 3, 878 P.2d 357; *Eagle Picher Mining & Smelting Co. v. Lamkin,* 1941 OK 132, ¶ 5, 189 Okla. 463, 117 P.2d 519.

**22.** *Id.*

**23.** *Winrock Farms v. Eldred,* 1968 OK 149, ¶ 14, 446 P.2d 265.

**24.** The Court in *Winrock Farms v. Eldred,* see note 23, supra, quoting from *Safeway Stores v. Mauk,* 1954 OK 287, 275 P.2d 987.

**25.** *Eagle Picher Mining & Smelting Corp. v. Lamkin,* see note 21, supra.

**26.** Transcript of Proceedings, February 13, 2013, John David Waldenville testifying in pertinent part at pp. 15–16:
"... Q. What were your duties at Cattlemen's?
A. Duties at Cattlemen's would be to watch the parking lot to make sure vehicles were not van-
dalized, to make sure that transients did not interfere with the customers coming and going and also coming within Cattlemen's itself, and to make the nightly deposit which would go over to the stockyard's bank which is one block to the north.
Q. During the time that you worked for Cattlemen's, had you ever given out any tickets or warning tickets to anybody in the area?
A. Yes, sir. Most generally seems like most of them were warnings. There would be individuals that would be driving excessive rate, either coming down Exchange or Agnew, I guess, were the streets there to the north or to the east just for the safety of the citizens that were parking across the street.
Q. When you were at Cattlemen's doing this security work, did you consider yourself to be an active, on-duty deputy sheriff of the Oklahoma County Sheriff's Department?
A. Yes, sir...."

police officer's duties.[27] Undoubtedly, the claimant looked like a police officer when he was shot. He was in uniform, wearing a badge, and carrying his service weapon. The employee arrived at Cattlemen's to start his shift in a clearly marked police vehicle equipped with a police radio and mobile data computer for the running of information. **Title 11 O.S.2011 § 34–101(A) provides in mandatory language that a "municipal police officer shall at all times have the power to make or order an arrest for any offense against the laws of this state or the ordinances of the municipality."** [28] There is little doubt that, given the opportunity, Waldenville would have exercised his statutory authority to make an arrest of his assailants had he not been blind-sided by the attack and rendered immobile. In a situation not involving a workers' compensation claim but rather the Governmental Tort Claims Act, this Court held that an off-duty police officer executing an arrest was entitled to indemnification for legal costs from the employing municipality as he was "acting within the scope of his employment" when the arrest was made.[29]

¶ 24 The facts of this case are largely undisputed. The overwhelming majority of sister courts faced with similar situations have determined that police officers, acting as security guards, were engaged in the performance of the job of a police officer.[30]

---

**27.** The following definition appears in 11 O.S. 2011 § 50–101(5), referring to parties who may be considered "officers" for the purpose of the Municipal Police Pension and Retirement System. It provides:

" 'Officer' means any duly appointed and sworn full-time officer of the regular police department of a municipality whose duties are to preserve the public peace, protect life and property, prevent crime, serve warrants, enforce all laws and municipal ordinances of this state, and any political subdivision thereof, and who is authorized to bear arms in the execution of such duties."

**28.** Title 11 O.S.2011 § 34–101 providing in pertinent part:

"A. A municipal police officer shall at all times have the power to make or order an arrest for any offense against the laws of this state or the ordinances of the municipality. The officer shall have such other powers, duties and functions as may be prescribed by law or ordinance...."
See also, 22 O.S.2011 § 37.1 providing:
"An 'off-duty' law enforcement officer in official uniform in attendance at a public function, event or assemblage of people shall have the same powers and obligations as when he is 'on-duty'. Nothing herein shall impose liability upon the governmental entity, by whom the law enforcement officer is employed, for actions of the said officer in the course of his employment by a nongovernmental entity."

**29.** *Groseclose v. City of Tulsa*, 1998 OK 112, ¶¶ 21–22, 990 P.2d 828.

**30.** *State v. Phillips*, 205 W.Va. 673, 520 S.E.2d 670 (1999) [Off-duty, uniformed police officer working as security guard when assaulted was acting in his "official capacity."]; *State v. Graham*, 130 Wash.2d 711, 927 P.2d 227 (1996) [Off-duty police officer working as private security guard acts in role of police officer when attempting arrest.]; *Leach v. Board of Police Comm'rs of Kansas City*, 118 S.W.3d 646 (Mo.App.2003) [Off-duty police officer was performing duties "the same or closely related" to those of on-duty officer.]; *Cooper v. City of Dayton*, 120 Ohio App.3d 34, 696 N.E.2d 640 (1997), *appeal not allowed*, 80 Ohio St.3d 1415, 684 N.E.2d 707 (1997) [Off-duty police officer injured while attempting to arrest shoplifter was entitled to benefits as city employee.]; *Harris County Sheriff's Office v. Negrete*, 259 Ga.App. 891, 578 S.E.2d 579 (2003) [Off-duty deputy sheriff injured in automobile accident while driving patrol car to his part-time job as security guard was injured in course of employment as deputy sheriff.]; *State of Nebraska v. Wilen*, 4 Neb.App. 132, 539 N.W.2d 650 (1995) [Off-duty police officer was working in official capacity for purposes of assault statute.]; *Blackwell v. Harris County*, 909 S.W.2d 135 (Tex. App.1995) [Privately employed, off-duty deputy, was acting as deputy while directing traffic for funeral procession.]; *Domanoski v. Borough of Fanwood*, 237 N.J.Super. 452, 568 A.2d 123 (1989) [Off-duty police officer arresting shoplifter while acting as security guard acting in capacity as peace keeper.]; *City of Hialeah v. Weber*, 491 So.2d 1204 (Fla.App.1986) [Off-duty police officer, attempting to stop the slashing of tires in parking lot where he was acting as security guard, determined to be performing his duty as a police officer.]. *United States Fire Ins. Co. v. City of Atlanta*, 135 Ga.App. 390, 217 S.E.2d 647 (1975) [Off-duty police officer who, with permission of city functioned as private security guard, was killed while attempting to control disturbance was performing police function.]. See also, *Brooks v. State*, 1977 OK CR 96, 561 P.2d 137 [Holding that a police officer, whether in uniform or not, taking it upon himself to enforce law acts as police officer in performance of his duties.]; A. Larson & L. Larson, *Larson's Workers' Compensation Law*, § 9303(1)(g) [Workers' compensation is intended to compensate an employee fairly for a lost earning capacity. If an employee works two jobs concurrently and a workplace injury disables that employee from

Where the workers' compensation court's determination that the employments are the same or similar can be reasonably applied and the clear weight of the evidence supports the same, we will not disturb such findings.[31] The clear weight of the evidence and the majority of extant jurisprudence support the conclusion that, while acting as a security guard for the employer, the claimant was engaged in an employment substantially the same or similar to his duties as a Deputy Sheriff. Under the unique facts presented, we determine that the employee's two salaries should be combined for the purpose of determining benefits.

## CONCLUSION

¶ 25 The language of 85 O.S.2011 § 313(G)[32] is unambiguous and not subject to interpretation. The Legislature has spoken. The plain, clear, unmistakable, unambiguous, mandatory, and unequivocal language of the statute mandates that private employers, hiring off-duty county employees, shall be responsible for the payment of workers' compensation benefits arising from incidents occurring during the hours of actual employment.

¶ 26 We stress that Oklahoma police officers have an ever present, statutorily-imposed responsibility to stop crime. However, this opinion should not be read to conclude that an officer, employed as private security, may always be considered to be acting in his official capacity for all purposes. Nevertheless, here, the claimant looked like a police officer and had all an officer's trappings, including a badge, a gun, and a fully equipped cruiser. More importantly, he was engaged in the protection of property as he walked to make Cattlemen's night deposit. Finally, had Waldenville not been ambushed and put out of commission, there is little doubt that his training as a Deputy Sheriff

would have surfaced and he would have done his best to stop the robbers and to effect their arrest. Under these unique facts, the duties the claimant was performing were identical or sufficiently similar to his full time profession as a police officer to warrant the combination of his wages for the purpose of determining the amount of compensation to which he is entitled.

**WORKERS' COMPENSATION COURT'S ORDER IS SUSTAINED.**

COLBERT, C.J., REIF, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, COMBS, GURICH, JJ., concur.

KAUGER, J., not Participating.

---

working both jobs, compensating the employee based on only the earnings from one employer effectively leaves the employee uncompensated for the loss of the other set of earnings.]; P. Golla, Performance of Public Duty by Off–Duty Police Officer Acting as Private Security Guard, 65 A.L.R.5th 623 (1999). But see, *Lane County v. Tadlock*, 131 Or.App. 282, 884 P.2d 875 (1994) [No workers' compensation coverage for off-duty deputy where no duty imposed to act while off-

duty.]; *Mount Sinai Hosp. v. City of Miami Beach*, 523 So.2d 722 (Fla.App.1988) [Off-duty police officer falling while exiting hospital was not acting as police officer at time of injury.].

**31.** See, *Friendship Farmer's Co–Operative Gin v. Allred*, 1945 OK 350, ¶ 0, 196 Okla. 462, 165 P.2d 838.

**32.** Title 85 O.S.2011 § 313(G), see note 2, supra.