2014 OK CIV APP 87

**QUAIL RIDGE SENIOR DEVELOPMENT, LLC, Petitioner,**

v.

**Robert Erroll BROOKS and The Workers' Compensation Court, Respondents.**

**No. 111712.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 20, 2014.

C. Craig Cole, John E. Gatliff II, Pete J. Katzdorn, C. Craig Cole & Associates, Oklahoma City, Oklahoma, for Petitioner.

Kent Eldridge, Kent Eldridge, PC, Oklahoma City, Oklahoma, for Respondent.

JOHN F. FISCHER, Presiding Judge.

¶1 Employer Quail Ridge Senior Development, LLC, seeks review of an order of a three-judge panel of the Workers' Compensation Court,[1] affirming the trial court's finding that Claimant Robert Erroll Brooks sustained a consequential injury to his right knee and ordering Employer to provide Claimant with reasonable and necessary medical treatment for that injury. Because the clear weight of the evidence supports the findings of the Workers' Compensation Court, we sustain the panel's order.

1. As of February 1, 2014, the Workers' Compensation Court has been renamed the Workers'

## BACKGROUND

¶2 Claimant worked for Employer as a driver. He drove a van, transporting the residents of Employer's assisted living center to and from their various appointments. His duties included helping the residents into the vehicle and loading their wheelchairs and walkers into the back of the van.

¶3 The record reveals that on August 1, 2011, as Claimant was helping a resident into the front seat of the van, he stepped off of the curb and felt "excruciating" pain in his right ankle. He continued working and, after he clocked out, he sought medical attention from his primary care physician. He was x-rayed, placed in a walking cast or "boot" and told to see a specialist and obtain an ultrasound. On the following day, August 2, Claimant provided his manager with written notice of his injury, stating that he "realized that this incident needed to be placed under some type of workman's compensation," he needed further treatment and "awaited further instruction." Approximately three weeks later, Claimant was referred to orthopedic surgeon, Dr. Geib, who ordered an MRI. The MRI revealed a right ruptured Achilles tendon, which Dr. Geib surgically repaired on an outpatient basis, on August 22, 2011. Claimant was released from the hospital with his right foot in a boot and weight-bearing restrictions. He was placed on crutches.

¶4 Claimant maintained that on August 23, the day after his surgery while he was still using crutches, he lost his balance and fell as he attempted to stand up from his chair to go to the restroom. Claimant, who was six feet five inches tall and weighed around 300 pounds, felt a tearing sensation in his right knee. His right knee caught all of his weight when he fell onto the tile floor in his kitchen.

¶5 On June 20, 2012, Claimant filed his Form 3 seeking benefits for the alleged August 1, 2011 injury to his right foot/ankle and a consequential injury to his right knee as a result of his fall on August 23. Employer admitted the injury to Claimant's ankle (Ac-

hilles tendon) but denied that Claimant sustained a consequential injury to his right knee due to the alleged post-surgery fall from his crutches. Employer maintained that Claimant had not timely reported the alleged consequential injury and by operation of 85 O.S. Supp.2010 § 24.2(A), it was presumed Claimant's knee injury was unrelated to his work. Employer further maintained that Claimant's knee problems pre-existed his August 23, 2011 fall or were the result of an unrelated subsequent injury that happened when he slipped on some liquid on the floor at work on August 12, 2012.

¶ 6 The matter was tried on the issue of medical treatment to Claimant's right knee. Claimant testified that he called Dr. Geib's office after he fell and spoke to Dr. Geib's physician assistant (P.A.). He stated the P.A. advised him to elevate his leg and avoid weight-bearing. Claimant testified that he also called Employer's executive director, Alun Skitt, and orally reported the knee injury. Employer's cross-examination of Claimant focused on causation and Claimant's credibility.

¶ 7 Employer presented witnesses who disputed Claimant's testimony. Employer's human resources director testified that at no time during 2011 had Claimant ever mentioned injuring his right knee or requested that Employer provide him medical treatment specifically for his knee. She testified she had observed Claimant walk with a limp prior to his August 1, 2011 ankle injury. She was aware that Claimant had injured his right knee at work on August 12, 2012, because Claimant had provided a detailed written injury report on that same day.

¶ 8 Alun Skitt, who was also Claimant's personal friend, testified that Claimant never reported a work-related injury or requested medical care for his knee. Skitt maintained he first learned of Claimant's alleged consequential right knee injury on receipt of Claimant's Form 3.

¶ 9 The medical evidence admitted at trial was conflicting. Claimant submitted the deposition of Dr. Geib and medical expert Dr. Litchfield for "substantive purposes." Employer had no objection to either deposition. Dr. Geib recommended that Claimant under-

go a total knee arthroplasty based on his opinion that knee arthroscopy in the form of a partial medial meniscectomy would not permanently resolve his symptoms or provide him much relief. In a report dated September 19, 2012, Dr. Litchfield concluded that Claimant had suffered a "consequential injury to the right leg/knee resulting in anatomical abnormalities consistent with chondral injury and meniscal/ligamentous tear." Dr. Litchfield stated: "It is my opinion that if it were not for the surgery of the right/ankle foot and [Claimant] being unsteady on his feet in the post operative period, that [he] would not have fallen." Dr. Litchfield further opined that Claimant's employment was the major cause of the need for treatment to his right leg/knee and that Claimant should be referred back to Dr. Geib for recommended treatment.

¶ 10 Employer submitted the report of its medical expert Dr. Young, which the trial court admitted over Claimant's probative value objection. It was Dr. Young's opinion that Claimant had not sustained a consequential injury and had sustained no permanent partial impairment or permanent anatomical abnormality to the right leg as a result of his accident on August 1, 2011.

¶ 11 The trial court had appointed Dr. Hargrove as an independent medical examiner (IME) to determine Claimant's need for medical treatment to his right knee and the reasonableness and necessity of the surgery recommended by treating physician Dr. Geib. The trial court also requested the IME to make specific recommendations regarding Claimant's treatment and address the need for diagnostic tests. In his assessment of Claimant the IME stated: "The patient reports being asymptomatic prior to the incident that occurred immediately post operatively while protecting his Achilles tendon rupture, which is an on the job injury." The IME noted that prior to December 2011, Dr. Geib had been treating Claimant "acutely for Achilles tendon reconstruction [that] was very slow to heal." The IME also noted that "Dr. Geib had commented that the patient had fallen post operatively and this eventually led to the formal knee evaluation." The IME agreed that Dr. Geib's recommendation

of a total knee arthroplasty was an appropriate surgery. The IME's report was admitted as the court's exhibit over Employer's probative value objection, specifically: "Your Honor, our objection relates to the fact that we believe the injury, as alleged, took place [in] August 2012."

¶ 12 On January 25, 2013, the trial court entered its order authorizing medical treatment. The trial court noted in its order that Employer had admitted the accidental injury to Claimant's right foot. The trial court found that Claimant sustained a consequential injury to the right leg/knee (aggravation of pre-existing condition) arising out of and in the course of his employment and that the major cause of that consequential injury was the result of Claimant slipping and falling while attempting to stand on his crutches after the right foot surgery. The trial court denied Employer's defenses of subsequent/intervening injury and pre-existing condition "based on testimony and medical evidence." The trial court ordered Employer to provide reasonable and necessary medical treatment with Dr. Geib for Claimant's right foot and right leg.

¶ 13 Employer appealed to a three-judge panel. The panel affirmed the trial court's order finding it neither contrary to law nor against the clear weight of the evidence. It is from this order that Employer appeals.[2]

## STANDARD OF REVIEW

¶ 14 Issues of whether Claimant sustained a compensable consequential injury and the need for requested medical treatment have been historically viewed as involving factual determinations to be resolved by the Workers' Compensation Court. *Berg v. Parker Drilling Co.*, 2004 OK 72, ¶ 13, 98 P.3d 1099, 1101. "The standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues." *Williams Cos., Inc. v. Dunkelgod*, 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113. The amendment authorizing review of an order or award to determine whether it was against the clear weight of the evidence applies to claims for injuries that occur after the effective date of the amendment. 85 O.S. Supp. 2010 § 3.6(C) became effective November 1, 2010[3], and therefore is applicable to Claimant's August 2011 injuries. *Cattlemen's Steakhouse, Inc. v. Waldenville*, 2013 OK 95, ¶ 7, 318 P.3d 1105. In relevant part, the statute provides that the appellate court may "modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:"

4. The order or award was against the clear weight of the evidence.

¶ 15 Accordingly, we review the Workers' Compensation Court's resolution of the questions of fact at issue in this appeal to determine if it is against the clear weight of the evidence. The statute requires that we apply the same standard of review traditionally applied in equity cases. *Peoplelink, LLC v. Bear*, 2014 OK 65, ¶ 6, —— P.3d ——. Pursuant to that standard of review, we defer to the Workers' Compensation Court's findings of fact and particularly its determination of a witness's credibility, unless the finding is against the clear weight of the evidence. *Id.* ¶ 7. We review issues of law raised by Employer *de novo*. *Conaghan v. Riverfield Country Day Sch.*, 2007 OK 60, ¶ 7, 163 P.3d 557, 560.

## ANALYSIS

### I. Alleged Lack of Timely Notice from Claimant

¶ 16 Section 85 O.S. Supp.2010 § 24.2(A), in effect at the time of Claimant's

---

2. Employer's petition in error sets forth eleven assignments of error, many of which are not addressed in its appellate brief. Propositions of error set forth in the petition in error, which are not briefed, will be deemed waived by this Court. Okla. Sup. Ct. R. 1.11(k)(1), 12 O.S. Supp.2011, ch. 15, app. 1 ("Issues raised in the Petition in Error but omitted from the brief may be deemed waived. Argument without supporting authority will not be considered."). We decline to address the issues listed in Employer's petition in error not supported by argument or supporting authority.

3. This section was repealed in 2011, and renumbered effective August 26, 2011, as part of the newly enacted Workers' Compensation Code, as 85 O.S.2011 § 340(D). Section 340 was repealed February 1, 2014, with the enactment of the Administrative Workers' Compensation Act.

alleged consequential injury, applies in this case. *Dunkelgod*, 2012 OK 96, ¶ 6, 295 P.3d 1107. The statute creates a rebuttable presumption that an injury did not arise out of or in the course of employment unless oral or written notice of injury was given to the employer within 30 days. Section 24.2(A) provided, in pertinent part:

Unless an employee or former employee gives oral or written notice to the employer or former employer within thirty (30) days of the date an injury occurs or the employee receives medical attention from a licensed physician during the thirty-day period from the date an injury occurred, the rebuttable presumption shall be that the injury was not work related. Such presumption must be overcome by a preponderance of the evidence.

Employer asserts that because Claimant failed to timely report any injury to his right knee, the presumption arose that the alleged knee injury was unrelated to Claimant's work. Employer argues that Claimant failed to overcome that statutory presumption with competent evidence and, therefore, the order authorizing medical treatment for Claimant's right knee must be vacated as a matter of law.

¶ 17 According to Employer, the panel should have concluded that Claimant "did not suffer any injury to his knee after his ankle surgery in 2011." Employer points out that witnesses characterized Claimant as "a detail person." To emphasis that point at trial, Employer submitted copies of two letters Claimant had written, the first reporting his right ankle injury on August 1, 2011, and the second documenting the incident on August 12, 2012, when he slipped on some liquid on the floor at work and injured his right knee. Employer submits that the two letters show Claimant's "modus operandi"—that it was his custom or practice to document his work-related injuries, and that he did not act in conformity with that practice in regard to the alleged consequential knee injury.

¶ 18 It is undisputed that Claimant failed to provide Employer with written notice of his knee injury. Emphasizing excerpts of testimony favorable to its position, Employer maintains that Claimant also failed to orally report his knee injury. However, Claimant testified that he telephoned his supervisor, Alun Skitt, and left several voice mail messages regarding the knee injury. Claimant testified that Skitt came over to his house "right after the injury to my knee and, in fact, brought me a wheel chair to use instead of crutches. And we discussed in detail, in my house, the knee injury and what I had done, and how it felt, and all the details of it."

¶ 19 Employer also argues the record establishes Claimant's failure to timely mention any knee injury to Dr. Geib. Claimant's first post-operative visit to Dr. Geib's office was on August 31, 2011. Claimant had some incision drainage on that date and was prescribed antibiotics. Dr. Geib's notes for that initial post-surgery visit focus on the Achilles tendon repair and do not specifically mention any injury to or treatment for Claimant's knee. However, a "Clinic Note" on that date specifically documents a post-surgery fall: "The patient returns to the office today 9 days status post right Achilles tendon repair. The patient states he fell." Dr. Geib's notes for Claimant's next two office visits, on September 30 and October 28, 2011, also focus on the surgically repaired right ankle without mentioning Claimant's knee. The first mention in Dr. Geib's notes of a knee injury was for Claimant's visit on December 5, 2011. The notes for that day provide: "Mr. Brooks returns today 1 [sic] months status post right Achilles tendon repair. The patient is also scheduled to evaluate his right knee." The notes also reflect that Dr. Geib performed a "focused orthopedic exam" of Claimant's knee, x-rayed it and ordered an MRI scan. In addition to "severe medial and patellofemoral osteoarthritis," the MRI revealed a "complex bucket handle tear of the medial meniscus." Dr. Geib characterized the MRI report as reflecting "an acute on chronic process."

¶ 20 Dr. Geib's testimony provides a plausible explanation for not mentioning the knee in his notes of Claimant's first three post-operative visits. First, Dr. Geib scheduled only 10 minutes for post-operative visits with patients.

I guess it's hard for me to have a patient describe to me all of their aches and pains if they all come in at one time. Certainly I was seeing [Claimant] specific for his ankle at this point. If he had concerns about his other joints, I don't know that I would have tried to pull that out of him.... But I don't know that I just ask everybody about every joint. When I see them specifically as a post-op, I usually kind of focus on that particular body part. If they express discomfort or voice problems with other joints, I certainly don't mind exploring that. But I don't on a routine basis ask how the rest of their body is doing.

And Dr. Geib, in his experience as an orthopedic surgeon, noted that a meniscus tear involves a gradual process to reach the point of complaint; it does not tend to heal on its own, and begins to affect other structures in the knee. "People think often times that it will get better on its own and it just doesn't. Once it becomes chronic, then they complain about it." In early January 2012, Claimant complained to Dr. Geib that the pain in his knee had worsened.

¶ 21 In determining that Claimant sustained a consequential injury, the trial court necessarily found that Claimant had orally reported his knee injury to Skitt, or that Claimant had offered sufficient evidence to overcome the section 24.2(A) presumption. In either event, this Court's "standard of review on appeal remains unchanged." *Davis v. Southwestern Bell Tel.*, 2006 OK 48, ¶ 17, 139 P.3d 892, 896. In *Davis*, the Court explained the effect of the section 24.2(A) presumption:

Rebutting the presumption in § 24.2(A), however, does not place any additional burden on the claimant seeking to prove a workers' compensation claim. Any claimant seeking to recover under the Workers' Compensation Act is required to prove, by a preponderance of the evidence, that the injury is work related. The statutory presumption changes nothing....

Thus, Section 24.2 only requires a claimant to do what he or she is already required by law to do. Once the claimant has established by a preponderance of the evidence that the injury arose out of employment, the burden shifts to the employer to refute work-related causation. Whether disability results from an accidental injury, or from a pre-existing disease or prior injury is a fact question for determination by the workers' compensation court.

*Id.* ¶¶ 15–16, 139 P.3d at 895–96 (internal citations and footnote omitted).

¶ 22 According to *Davis*, when Employer placed the section 24.2(A) presumption at issue the question for the trial court was whether a preponderance of the evidence proved Claimant's injury arose out of and in the course of employment. The trial court necessarily found Claimant's testimony was credible, and persuaded by medical evidence favorable to Claimant as well, concluded that he established by a preponderance of the evidence that his post-surgery fall was the major cause of his knee injury. The panel agreed with, and affirmed the trial court. In doing so, the panel noted at the hearing that the trial judge believed claimant's testimony on this issue. After reviewing the entire record, we are unable to conclude that the decision of the three-judge panel is against the clear weight of the evidence. As the Oklahoma Supreme Court has recently made clear, this Court's standard of review requires deference to the trial court's assessment of witness credibility. *Peoplelink, LLC v. Bear*, 2014 OK 65, ¶ 10, — P.3d —.

## II. Credibility Determinations and the Standard of Review

¶ 23 The Legislature did not define "against the clear weight of the evidence" in the Workers' Compensation Act, and the scope of review is not specified. But in *Bear*, the Court recognized that the "clear weight of the evidence" standard of review is "identical" to the long-standing standard of review applied by the appellate courts in reviewing findings of fact by the district courts in equity cases. *Id.* ¶ 6, — P.3d at —. Although the evidence is weighed, the method governing review nonetheless affords "great deference to trial court determinations of the credibility of the witnesses and the weight to be given their testimony." *Id.* ¶ 7 (citing *Peyton v. McCaslin*, 1966 OK 4, ¶ 16, 417 P.2d 316, 321). As the Supreme Court ex-

plained in *Bear*, this level of deference takes into account the fact that the trial court " 'had the advantage of observing the witnesses on the stand.' " *Id.* (quoting *Robert L. Wheeler, Inc. v. Scott*, 1991 OK 95, ¶ 12, 818 P.2d 475, 480).

¶ 24 As the factfinder, the trial court "may have insights not conveyed by the record." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). Even when the evidence is "sharply in conflict," the appellate court, in applying the equity standard of review as directed by *Peoplelink, LLC v. Bear*, 2014 OK 65, ¶ 10, —— P.3d ——, will not disturb the trial court's findings "simply because there in a conflict in the testimony, or for the reason that it is possible to draw another conclusion from the evidence." *Ransom v. Fields*, 1934 OK 453, ¶¶ 0, 15, 35 P.2d 935. Where the evidence on an issue is largely oral, only the trial court can be aware of the variations in demeanor and tone of voice, which bear heavily on the listener's understanding and belief in what is said.

¶ 25 Unlike the trial court, we have not had the benefit of hearing Claimant and Employer's witnesses testify, nor did we have the advantage of observing their demeanor as they testified at trial. As a result, our ability to judge the credibility of these witnesses is limited. Nonetheless, we note that Claimant was consistent in relating the history of his right knee injury. Claimant's testimony does not contain "inherent improbabilities or contradictions which alone, or in connection with other circumstances justify an inference that the evidence is false." *Bittman v. Boardman Co.*, 1977 OK 32, ¶ 4, 560 P.2d 967. He lost his balance and fell, on the day after his Achilles tendon surgery, while attempting to use his crutches to get up out of his chair. He testified that he orally reported the fall to Employer and to the P.A. at his treating physician's office. Employer requests this Court to reweigh Claimant's testimony, find it less credible than the Workers' Compensation Court did, and at the same time give greater credence to Employer's evidence. This we cannot do.

### III. The Medical Evidence

¶ 26 Employer argues that Dr. Geib's testimony establishes the doctor's "inability to enter an opinion" and shows he "has no opinion" on whether Claimant injured his right knee after the ankle surgery in August 2011. Employer focuses on the following excerpt from Dr. Geib's testimony:

Q. So is it your opinion to a reasonable medical certainty that his fall from his crutches following the Achilles tendon repair, which injured his knee, was a consequence of his Achilles injury?

A. I think it was a—I guess it's hard for me to say it was directly related to the surgery. But certainly ... being on crutches and being 6'5", 300 pounds, it probably made it difficult for him to get around. And certainly could contribute to his injury to his knee.

Employer then asserts that there is no other competent medical evidence in the record that supports this consequential injury claim and for that reason this Court should vacate the panel's order.

¶ 27 However, Employer completely ignores the report from Claimant's medical expert Dr. Litchfield. Employer has not claimed that Dr. Litchfield's testimony is not "objective medical evidence" within the definition of 85 O.S. Supp.2010 § 3(13)(a). Employer does not claim that Dr. Litchfield lacks the qualifications to provide competent evidence as to the major cause of Claimant's right knee injury. Employer did not object, on any grounds, to Claimant's medical evidence when it was introduced at trial. "All challenges to the legal sufficiency of the opposing party's evidence shall be made by specific objection at the time of trial." Workers' Compensation Court Rule 27(A), 85 O.S. Supp.2012, ch. 4, app. "Unless an objection is timely made, it shall be waived."

¶ 28 Further, the scope of this Court's review of the panel's order stands limited to the issues Employer presented in his request for review by the panel and the assignments of error it included therein. *Enochs v. Martin Props., Inc.*, 1997 OK 132, ¶ 9, 954 P.2d 124, 128; *Red Rock Mental Health v. Roberts*, 1997 OK 133, n. 5, 940 P.2d 486, 490 n. 5. Workers' Compensation Court Rule 60, 12

O.S. Supp.2012, ch. 4, app. 2, states that the Request for Review shall include:

> 3. A specific statement of each conclusion of law and finding of fact urged as error. General allegations will not be accepted. General allegations of error include statements that the decision of the trial judge is "against the clear weight of the evidence or contrary to law." The party or parties appealing to the three-judge panel will be bound by the allegations of error contained in the Request for Review and will be deemed to have waived all others....

Employer's request for panel review claimed paragraphs 1, 3, 4 and 10 of the trial court's order were "against the clear weight of the evidence and contrary to law." The request for review does not specifically challenge, nor can it be liberally construed as challenging, either the admissibility or probative value of the report of Claimant's medical expert, Dr. Litchfield. The transcript of the hearing before the panel reflects that Employer did not mention Dr. Litchfield's report during oral argument.

■ ¶ 29 Any issues that Employer failed to raise before the review panel are beyond the scope of this Court's review. *Bostick Tank Truck Serv. v. Nix*, 1988 OK 128, ¶ 11, 764 P.2d 1344, 1349. This Court finds that Employer has failed to preserve any objection to Dr. Litchfield's report. *See Bear*, 2014 OK 65, ¶ 9, —— P.3d ——.

■ ¶ 30 Dr. Litchfield's report constitutes "objective medical evidence" in support of this claim.[4] Employer's expert, Dr. Young, concluded in his report that Claimant did not sustain a consequential injury. But competing experts can have admissible opinions with varying probative value. *Scruggs v. Edwards*, 2007 OK 6, ¶ 21, 154 P.3d 1257, 1265. "Evidence of one expert may be accepted while that of another may be rejected in whole or in part." *Lamson & Sessions v. Doyle*, 2002 OK 89, ¶ 12, 61 P.3d 215, 219. "As long as the findings of the lower court

are not incompatible with the overall evidence, as accepted or rejected, there is no basis for disturbing the factual determinations." *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 27, 829 P.2d 15, 26–27.

## IV. Employer's Alleged Deprivation of a Fair Hearing

■ ¶ 31 For its final proposition of error, Employer claims that Claimant prejudiced its right to a fair hearing before the panel by attempting to video the proceedings. We have reviewed the transcript of the hearing before the panel. While Claimant's counsel was arguing to the panel, the presiding judge interrupted him and stated:

> Just a second. Sir, you can't record these proceedings in here. That's your claimant, isn't it? You have to get permission of the Court to do that.

The transcript reveals that, following this brief admonishment, Claimant's counsel immediately resumed speaking. There was an orderly presentation of the parties' arguments. Employer had a full and fair opportunity to present its appeal to the panel. In fact, Employer's counsel attempted to use the incident to Employer's benefit and bolster his arguments by pointing out to the panel that the incident was an another example of Claimant's "detailing."

> The Court has just witnesses as an example of the claimant detailing us-he was trying to record the proceeding. And when he's injured he writes a detailed report.... He did that on August the 2nd, 2011, after his initial ankle injury, and he did the exact same thing on August the 12th, 2012.

> When he wants to put something—when he has an injury, when something takes place, he puts it in writing. You just saw him trying to videotape. That's an example of what's taking place in this [case].

4. "[A] compensable injury must be established by objective medical evidence." 85 O.S. Supp.2010 § 3(13)(a). "'Objective medical evidence' means evidence that meets the criteria of Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto." 85 O.S. Supp.2010 § 3(17). A medical opinion from a

physician meets the statutory "objective medical evidence" criteria if the opinion is formulated under the AMA Guidelines and workers' compensation law. *Conaghan v. Riverfield Country Day Sch.*, 2007 OK 60, ¶ 17, 163 P.3d 557, 563 (citing *Scruggs v. Edwards*, 2007 OK 6, ¶ 21, 154 P.3d 1257, 1262).

Employer has failed to allege, much less prove, how the attempted video prejudiced Employer. We find that the incident had no effect whatsoever on Employer's right to a fair hearing before the panel and that no reversible error occurred.

## CONCLUSION

¶ 32 In this case, there is evidence supporting Employer's position and detracting from the Claimant's contentions about how and when his knee injury occurred and what he did to report that injury to Employer. That evidence is not insignificant. But on the crucial issues, the Workers' Compensation Court found Claimant's evidence credible. The applicable standard of review and the record in this case support our deference to those findings. As a result, the award of benefits in this case is not against the clear weight of the evidence. Further, the decision of the Workers' Compensation Court is not contrary to law. Finding no reversible error, we sustain the panel's decision.

**SUSTAINED.**

RAPP, J., and THORNBRUGH, J., concur.